**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jesus CASTRO–CERVANTES,
Defendant–Appellant.**

**No. 89–50145.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 10, 1990.

Decided Aug. 9, 1990.

Amended March 6, 1991.

Janice D. Hogan, Asst. Federal Public Defender, San Diego, Cal., for defendant-appellant.

Roger W. Haines, Jr., Asst. U.S. Attys., San Diego, Cal., for plaintiff-appellee.

Before GOODWIN, FARRIS and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

Jesus Castro–Cervantes appeals from a sentence imposed upon him by the district court for bank robbery. We remand.

## FACTS

On September 21, 1988 Castro–Cervantes was indicted on seven counts of unarmed bank robbery in violation of 18 U.S.C. § 2113(a). On November 21, 1988 he pleaded guilty to counts 1 and 2, pursuant to a plea agreement whereby the government dropped the remaining five counts and he agreed to accept responsibility for two uncharged bank robberies for which the government agreed not to indict him.

According to the presentence report of the probation officer, Castro–Cervantes admitted the seven robberies of banks in August and September 1988 charged in the indictment, plus two earlier robberies on July 25, 1988 and August 8, 1988. He robbed the banks in order to purchase heroin. A man named Oscar helped him write the demand notes and drove him to the banks they had targeted. He split the proceeds with Oscar and another man named Santiago who accompanied them on most of the robberies. In the first robbery that he committed, a dye pack exploded when he tried to take it out of the bank. Oscar told him to remove the dye pack the next time.

The probation officer in the presentence report found the appropriate Guideline range to be 30 and 37 months, but recommended a departure from the Guidelines to 120 months because Castro–Cervantes admitted to nine bank robberies and the Guidelines did not take into account this level of behavior.

At the sentencing hearing in February 1989 the court accepted the probation officer's recommendation to make a departure but rejected the recommendation of 120

months. The court sentenced Castro–Cervantes to a term of 60 months, noting that the number of robberies was "justification for departure." The court added that "the sophistication" shown in Castro–Cervantes's treatment of the dye packs was a second ground for the court departing from the Guidelines. A third reason given by the court for departure was "the fact" that Castro–Cervantes was a member of "an organized ring." The court also candidly expressed its surprise that the Guidelines in themselves did not lead to a higher sentence.

Castro–Cervantes appealed.

## ANALYSIS

The Sentencing Guidelines, under the heading "Applicable Guidelines, § 1B1.2" provided: "Similarly, stipulations to additional offenses are treated as if the defendant had been convicted of separate counts charging those offenses." This provision (later amended) was in force when the defendant committed the robberies, when he entered his plea, and when he was sentenced. Consequently, the two uncharged but admitted robberies were to be counted as convictions. The probation officer failed to follow these directions. Castro–Cervantes' sentence under the Guidelines was to be calculated on the basis of the two charged robberies that were pleaded to and the two uncharged robberies that were stipulated to as part of the plea agreement. These four robberies will hereinafter be referred to as the counts of conviction.

The "base offense level" for robbery in effect in the relevant period was 18. United States Sentencing Commission, *Guidelines Manual*, § 2B3.1 (1988 Revised Edition). In applying this guideline, a loss from a financial institution counts "as at least $5,000" and, as a result, the base offense level is increased by one level. *Id.* Hence, the offense level was 19 for each of the four robberies since each involved robbery from a bank.

Where there are multiple counts of conviction, the court is to use the procedures in Part D of Chapter Three to determine the "combined offense level" for all the counts of conviction taken together. U.S.S.G. § 3D1.1. Under this part, independent instances of robbery are not to be grouped together nor are the amounts of money involved to be added. *See* U.S.S.G. § 3D1.2 and comment (n.6). Rather, with some stretching of the English language, each separate robbery is called a "Group" and treated as a "Group." U.S.S.G. § 3D1.5, Illustration (n.1).

To determine "the combined offense level," the "Group" with the highest offense level counts as "One Unit." Each "Group" that is "equally serious" counts as an additional unit. U.S.S.G. § 3D1.4. Here each robbery is equally serious, so there are four "Groups" equal to four "Units." Four "Units" adds 4 levels to the offense level. *Id.* Hence Castro–Cervantes' combined offense level was 23.

As Castro–Cervantes accepted responsibility, 2 points must be deducted. U.S.S.G. § 3E1.1. Under the Guidelines, therefore, Castro–Cervantes' total offense level was 21. An offense level of 21 for a defendant with no criminal record leads to a sentence between 37 and 46 months. U.S.S.G. ch. 5, Pt. A ("Sentencing Table").

■ The court was then permitted "without limitation" to take into account information about Castro–Cervantes which had not been taken into account by the Guidelines. U.S.S.G. § 1B1.4. The Guidelines do not take into account the sophistication of the robber and, therefore, this factor is a proper ground for the sentencing court to take into consideration.

■ But the Guidelines implicitly take into account participation by a robber as a member of a ring. This implication arises because there is an increase in the offense level if the defendant was a leader, U.S.S.G. § 3B1.1, and there is a decrease in the offense level if the defendant was a minor participant. *Id.* § 3B1.2. It may be assumed that the standard penalty is provided for the member of the ring who is neither a leader nor a minor player. Hence it was improper to increase the sentence because Castro–Cervantes was a member of an organized group.

■ The court, following the lead of the probation officer, also justified its depar-

ture by the number of the robberies. Four of the robberies had already been taken into account by the Guidelines. To count them was to count twice. The Sentencing Guidelines say broadly that, in determining "whether a departure from the guidelines is warranted," the sentencing court is free to consider "any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." U.S.S.G. § 1B1.4. The guidelines say that the court may so consider such information "without limitation." *Id.*

> The commentary on Section 1B1.4 adds: A court is not precluded from considering information that the guidelines do not take into account. For example, if the defendant committed two robberies, but as part of a plea negotiation entered a guilty plea to only one, the robbery that was not taken into account by the guidelines would provide a reason for sentencing at the top of the guideline range.

If Section 1B1.4 and its commentary stood alone there would be no doubt that the district court here could consider in its sentencing decision the five robberies where the charges were dismissed. But the Sentencing Guidelines also provide:

> In the case of a plea agreement that includes the dismissal of any charges ... the court may accept the agreement if the court determines ... that the *remaining charges adequately reflect the seriousness of the actual offense behavior*. . . .

U.S.S.G. § 6B1.2(a) (policy statement) (emphasis added). The plain implication of this section is that if the sentencing court believes that the remaining charges do not adequately reflect the seriousness of the defendant's behavior, the court should not accept the plea agreement. *See United States v. Plaza-Garcia*, 914 F.2d 345, 348 (1st Cir.1990) (per Breyer, C.J.).

With these two sections of the Sentencing Guidelines in tension, if not in conflict, we hold that the sentencing court should reject a plea bargain that does not reflect the seriousness of the defendant's behavior and should not accept a plea bargain and then later count dismissed charges in calculating the defendant's sentence.

This holding puts this circuit in conflict with two other circuits. *United States v. Kim*, 896 F.2d 678, 684 (2d Cir.1990) (per Newman, J.), *followed*, *United States v. Zamarripa*, 905 F.2d 337, 341 (10th Cir. 1990). We believe, however, that our holding is faithful not only to the guidelines but to the fundamental concept of plea bargaining. A plea bargain is governed by contract principles. *United States v. Keller*, 902 F.2d 1391, 1393 (9th Cir.1990); *United States v. Hogan*, 862 F.2d 386, 388 (1st Cir.1988). Compliance with its terms is expected of both the defendant and the government. The court is not a party to the agreement and may reject it. But for the court to let the defendant plead to certain charges and then be penalized on charges that have, by agreement, been dismissed is not only unfair; it violates the spirit if not the letter of the bargain.

██ Under prevailing precedent, if a court gives good reasons and bad reasons for departing from the guidelines, the sentence must be reversed. *United States v. Nuno-Para*, 877 F.2d 1409, 1414 (9th Cir. 1989).

Finally, Castro-Cervantes objects to the court's imposition of two special $50 assessments. The district court stayed this imposition pending a decision of the United States Supreme Court in *United States v. Munoz-Flores*, 863 F.2d 654 (9th Cir.1988), wherein this court held such assessments unconstitutional. The Supreme Court's opinion in *United States v. Munoz-Flores*, —— U.S. ——, 110 S.Ct. 1964, 109 L.Ed.2d 384 (1990), reverses our decision in *Munoz-Flores*. Accordingly, the assessments in the present case were proper.

Because the district court's reliance on improper factors in departing upward requires us to vacate the sentence and remand for resentencing, it is unnecessary to address Castro-Cervantes's remaining contentions.

REMANDED for resentencing.