974 F.2d 1344
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jan Vicki FINE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Stanley Alan HERSHEY, Defendant-Appellant.
 Nos. 91-10109, 91-10124.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 11, 1992.
Decided Sept. 8, 1992.
 
 Before JAMES R. BROWNING, ALDISERT* and PREGERSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 In criminal proceedings arising out of the disappearance of Gordon Johnson, Stanley Hershey and Jan Fine were convicted of eighteen counts of aiding and abetting, conspiracy, bank fraud, fraud in connection with access devices, possession of stolen property, possession of a stolen motor vehicle, interstate transportation of stolen property, and interstate transportation of a stolen motor vehicle. Hershey was sentenced to twenty years imprisonment and Fine to five. We affirm the convictions but remand for resentencing.
 
 I. Fine's and Hershey's Convictions
 A.
 
 3
 Fine and Hershey challenge the district court's denial of their motion to dismiss the indictment for prosecutorial vindictiveness. They argue the government's decision to seek a superseding indictment raising the number of charges to forty was a vindictive response to Hershey's refusal to plead guilty to all three of the counts in the original indictment.
 
 
 4
 We affirm the district court's denial of the motion to dismiss under any of the possible standards of review. See Guam v. Fegurgur, 800 F.2d 1470, 1472 (9th Cir.1986). The sole evidence of vindictive prosecution Fine and Hershey offer is the government counsel's refusal to confirm or deny that (1) he threatened to bring additional charges if Hershey did not plead guilty to the original indictment and (2) he sought to use the additional charges to prove Fine and Hershey were responsible for Johnson's probable death, which in turn would support an upward departure from the federal sentencing guidelines. Even if these were the government's purposes in filing the superseding indictment, they do not in and of themselves constitute vindictive prosecution. In United States v. Goodwin, 457 U.S. 368 (1982), the Supreme Court held the decision in Bordenkircher v. Hayes, 434 U.S. 357 (1978), that "the Due Process Clause ... did not prohibit a prosecutor from carrying out a threat, made during plea negotiations, to bring additional charges against an accused who refused to plead guilty to the offense with which he was originally charged," 457 U.S. at 377 (emphasis added), also applies when the threat is made after plea negotiations have failed and the defendant has insisted on proceeding to trial. Id. at 380-84 & 382 n. 15. Even where the additional charges are brought to guarantee a harsher sentence, there is no presumption of prosecutorial vindictiveness. See id. at 377 n. 9 (charge in original indictment in Bordenkircher carried a term of 2 to 10 years; charges in superseding indictment mandated a life sentence).
 
 B.
 
 5
 Fine challenges the trial court's use of a Jewell instruction. See United States v. Jewell, 532 F.2d 697 (9th Cir.1976) (en banc). A Jewell instruction is appropriate where "there are facts that point in the direction of deliberate ignorance," United States v. Murrieta-Bejarano, 552 F.2d 1323, 1325 (9th Cir.1977), or "there is evidence of both actual knowledge and of deliberate ignorance." United States v. Perez-Padilla, 846 F.2d 1182, 1183 (9th Cir.1988).
 
 
 6
 Hershey informed Fine he had a feeling Johnson would support them; the next day he told her Johnson had gone to Los Angeles but had left them his RV and money; he later told her they were also going to take care of Johnson's financial affairs for him. Over the next several months, Fine and Hershey drove Johnson's RV to Arizona and withdrew thousands of dollars from Johnson's bank account. When a federal marshal contacted them in Arizona, Hershey claimed he did not know Johnson; when the marshal returned, Hershey declared to Fine his fear that their actions would be misinterpreted. At the same time, Hershey temporarily abandoned the RV for a hotel. When Fine and Hershey left Arizona for Lake Tahoe, they switched the license plates on Johnson's RV. Despite these events extending over a period of several months, Fine did not ask how or why Johnson would support them, how they would obtain access to Johnson's money, or why they were taking care of Johnson's financial affairs. Trial Transcript at 89, 91, 96 (Oct. 23, 1990). She failed to question Hershey closely after he spoke with the marshal, even though she was "puzzled" and "scared" by Hershey's behavior. Id. at 98, 103. Fine also failed to ask Hershey why he temporarily left the RV, id. at 104, and why he changed the license plates on the RV. Id. at 13 (Oct. 24, 1990). She never asked Hershey what had happened to Johnson, even though she wondered where he was. Id. at 106 (Oct. 23, 1990).
 
 
 7
 These facts "would have put any reasonable person on notice that there was a 'high probability' that the [conduct] was illegal" and "[a]ny reasonable person would have inquired extensively," United States v. Nicholson, 677 F.2d 706, 710-11 (9th Cir.1982). The evidence was sufficient to permit a jury to find that Fine " 'purposely contrived to avoid learning all of the facts.' " United States v. Garzon, 688 F.2d 607, 609 (9th Cir.1982) (citation omitted).
 
 
 8
 The record supports the district court's decision to give a Jewell instruction.
 
 C.
 
 9
 Hershey challenges the trial court's failure to suppress his handwriting exemplar and the government's analysis of it. The government obtained the exemplars from Hershey on July 26, 1990, but did not send them to the FBI for analysis until September 19. On September 26 the Magistrate ordered the analysis completed "forthwith" and copies sent to Hershey. Hershey received copies of the exemplars and the analysis by October 9. Trial began October 17. Fed.R.Crim.P. 16(a)(1)(D) requires the government to turn over "any results or reports ... of scientific tests ... which are within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government."
 
 
 10
 The government complied with Rule 16 by turning over the results of the tests when they were available. Hershey did not seek a continuance, made no objection to admission of the evidence and has failed to show prejudice.
 
 II. Hershey's Sentence
 
 11
 The base level for Hershey's fraud conviction was six. U.S.S.G. § 2F1.1(a). He received a nine level increase because the loss exceeded $350,000, id. at § 2F1.1(b)(1)(J), a two level increase for more than minimal planning, id. at § 2F1.1(b)(2)(A), and a two level increase because Johnson was a vulnerable victim, id. at § 3A1.1, for a total level of nineteen and a guideline range of 30-37 months. The district court departed upward and imposed a sentence of twenty years. Hershey challenges the vulnerable victim adjustment and the upward departure.
 
 A.
 
 12
 We review the district court's interpretation of the vulnerable victim adjustment de novo and review its findings for clear error. United States v. Peters, 962 F.2d 1410, 1415-16 (9th Cir.1992). The guidelines allow an upward adjustment of two levels "[i]f the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1. The court must "consider the characteristics of the defendant's chosen victim, the victim's reaction to the criminal conduct, and the circumstances surrounding the criminal act." Peters, 962 F.2d at 1417.
 
 
 13
 The district court found Hershey "singled out" Johnson because his "friendliness," "openness" and "loneliness" made the recent retiree "susceptib[le] to this particular kind of criminal activity." Sentencing Transcript at 48 (Feb. 15, 1991). The district court's findings are not clearly erroneous and support the conclusion that Hershey, who deliberately chose Johnson as a victim, "knew or should have known" Johnson was "particularly susceptible to the criminal conduct."
 
 B.
 
 14
 We review the district court's upward departure under the three-step approach of United States v. Lira-Barraza, 941 F.2d 745 (9th Cir.1991) (en banc). First, the district court must have had legal authority to depart under 18 U.S.C. § 3553(b). Id. at 746. Second, we review the district court's factual findings for clear error. Id. Third, we consider whether the extent of the departure was reasonable. Id. at 747. "[D]eparture sentences are to be determined in light of the structure, standards and policies of the Act and Guidelines," and must include "a reasoned explanation of the extent of the departure." Id. at 751.
 
 
 15
 Hershey challenges the upward departure on a number of grounds.
 
 
 16
 First, he claims the court erred in using his refusal to accept responsibility for the crimes to support an upward departure. While the court denied the two-level downward adjustment for acceptance of responsibility because Hershey, on the advice of his attorney, specifically refused to accept responsibility for his criminal conduct, there is no evidence the refusal played any role in the court's decision to depart upward.[1]
 
 
 17
 Neither is there any evidence to support Hershey's claim that his due process rights were violated when the government sought, and the court granted, an upward departure to "punish" him for having refused to plead guilty and asserting his right to go to trial. As we noted in section I.A., we do not presume prosecutorial vindictiveness--i.e., a punitive motive--merely from the fact that additional charges brought after a defendant has decided not to plead guilty carry the likelihood or even the certainty of a harsher sentence. Nothing in the record indicates that the seeking and granting of the upward departure bore any illicit relation to Hershey's decision to exercise his right to trial.
 
 
 18
 Hershey also contends the court justified the upward departure by improperly relying on Johnson's probable death, the sophistication of the crime, the extreme psychological injury Johnson's family suffered, and Johnson's status as a vulnerable victim. Although the death of the victim may be an appropriate reason for departure from the guidelines, see U.S.S.G. § 5K2.1, it is not clear whether or to what extent the court's belief that Johnson was dead influenced the decision to depart upward. The court stated, "Mr. Hershey has not been charged with, and has not been convicted of[,] homicide" so "it would be inappropriate to treat him for sentencing as if he were," but also declared, "[I]t's not a wild speculation in my view at all to conclude, to find, to believe based on the evidence at this trial that Mr. Johnson has met with a very unfortunate and probably fatal end. Certainly there's nothing at all in this record, not a scintilla of evidence, that would suggest it's anything but that. And I think we would all be deluding ourselves if we ignored that." Sentencing Transcript at 72-73.[2]
 
 
 19
 The Sentencing Reform Act requires that the sentencing court state "the specific reason for the imposition of a sentence different from that described" in the guidelines. 18 U.S.C. § 3553(c)(2). These findings must be "sufficiently specific so that this court can engage in the meaningful review envisioned" by Congress. United States v. Wells, 878 F.2d 1232, 1233 (9th Cir.1989); see also United States v. Michel, 876 F.2d 784, 786 (9th Cir.1989) (sec. 3553(b) requires the district court to "clearly identify the specific aggravating circumstances present in this case"). The district court's statements about Hershey's role in Johnson's death are too ambiguous for us to engage in meaningful review of the sentence because we cannot determine (1) whether the court found Hershey responsible for Johnson's death and (2) if so, whether the court relied upon this factor in departing upward.
 
 
 20
 The court does appear to have relied on the sophistication of the crime, the extreme psychological injury Johnson's family suffered, and Johnson's status as a vulnerable victim to justify the departure, although to what extent is not clear. See Sentencing Transcript at 74-75 (discussing sophistication of crime), 75 (stating "it would be wrong not to consider" the impact of the crime on Johnson's family), 77-78 (noting that to award only a two-level adjustment for Johnson's status as a vulnerable victim "results in a distortion" and is "simply ... ridiculous").
 
 
 21
 The sophistication of the criminal or the crime may be a proper reason for departure. United States v. Castro-Cervantes, 911 F.2d 222, 224 (9th Cir.1990). The vulnerability of the victim, although taken into account by the sentencing guidelines, see U.S.S.G. § 3A1.1, may also be a proper reason for departure. See U.S.S.G. § 5K2.0 (departure may be appropriate where guidelines do not adequately take into consideration the degree of an aggravating circumstance). However, the psychological impact on Johnson's family is not an appropriate ground for departure. United States v. Hoyungowa, 930 F.2d 744, 747 (9th Cir.1991) (U.S.S.G. § 5K2.3 (extreme psychological injury as ground for upward departure) applies only to the direct victim of the crime and not to the victim's family). When a court gives both "good reasons and bad reasons for departing from the guidelines, the sentence must be reversed." Castro-Cervantes, 911 F.2d at 224-25.[3]
 
 
 22
 We vacate Hershey's sentence and remand for resentencing.
 
 III. Fine's Sentence
 
 23
 Fine's offense level was the same as Hershey's, except she also received a two-level upward adjustment for obstruction of justice, U.S.S.G. § 3C1.1, for a base level of 21 and a guideline range of 37-46 months. The district court departed upward and imposed a sentence of 60 months.
 
 
 24
 Fine asserts she deserved a downward adjustment as a minor or minimal participant under U.S.S.G. § 3B1.2. While the court found Fine somewhat less culpable than Hershey, the court was not obligated to make a downward adjustment. See United States v. Molina, 934 F.2d 1440, 1452 (9th Cir.1991) (district court "is not compelled to find that a defendant who is the least culpable in a particular [offense] is ... entitled to a reduction under § 3B1.2 ... and because the appellant played a significant ... role in the criminal activity, the district court's decision not to reduce [her] offense level was not clearly erroneous").
 
 
 25
 Fine challenges the district court's finding that Johnson was a vulnerable victim. For the reasons discussed in section II.A., the district court's findings were not clearly erroneous and we affirm the two-level vulnerable victim upward adjustment.
 
 
 26
 Fine also challenges the district court's upward departure in her case. The district court based its departure upon a finding that the crime involved unusual sophistication. Sentencing Transcript at 118. The departure satisfies the first two Lira-Barraza factors: sophistication is an appropriate ground for upward departure and the district court's findings are not clearly erroneous. Under the third factor, however, the district court must justify the departure by "a reasoned explanation ... founded on the structure, standards and policies of the Act and Guidelines." 941 F.2d at 751. The court did not provide a reasoned explanation of how Fine's five year sentence related to the sophistication of the crime and how the sentence was consistent with "the structure, standards and policies of the Act and Guidelines." We vacate Fine's sentence and remand for resentencing.
 
 
 27
 The convictions are affirmed. The sentences are vacated and the cases remanded for resentencing.
 
 
 
 *
 Honorable Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We also reject Hershey's claim that his fifth amendment rights were violated because he was forced to forego the downward adjustment for acceptance of responsibility out of fear that such acceptance could incriminate him in future proceedings. See United States v. Gonzalez, 897 F.2d 1018, 1020-21 (9th Cir.1990)
 
 
 [2]
 We note that while a finding that the victim was killed may be an appropriate reason for departure, the standard of proof for making such a finding at sentencing rather than at trial is not clear. See United States v. Restrepo, 946 F.2d 654, 656 n. 1, 659-61 (9th Cir.1991) (en banc) (sentencing factor that drastically affects length of sentence may require higher standard of proof than preponderance of the evidence)
 
 
 [3]
 Reversal would be warranted in any case because the district court did not provide "a reasoned explanation of the extent of the departure," Lira-Barraza, 941 F.2d at 751, even in regard to those factors we have indicated may support upward departure