UNITED STATES of America, Plaintiff–Appellee,

v.

Andre SMITH, Defendant–Appellant.

No. 91–50029.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 11, 1991.

Submission Withdrawn April 9, 1992.

Resubmitted Oct. 1, 1992.

Decided Dec. 9, 1992.

Kevin R. Brehm, Deputy Federal Public Defender, Los Angeles, CA, for defendant-appellant.

Mark C. Holscher, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: BEEZER, HALL, and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

Andre Smith appeals the sentence he received after pleading guilty to two counts of student loan fraud (20 U.S.C. § 1097) and one count of making false statements to a government agency (18 U.S.C. § 1001). Smith contends that the district court erred in its application of the United States Sentencing Guidelines ("Sentencing Guidelines"). This court has jurisdiction of Smith's timely appeal pursuant to 28 U.S.C. § 1291. We affirm.

### I. Facts

The two issues in this appeal involve Smith's criminal history. On November 28, 1983, Smith was convicted of one count of battery and was sentenced to four months in jail. At the same time, Smith was convicted of a separate count of false imprisonment and was sentenced to an additional four months in jail. Both the battery and false imprisonment were sexually motivated attacks on women, with each attack unrelated factually to the other and involving separate victims, dates, and locations. The two four month sentences were served consecutively. However, the battery and false imprisonment cases were handled in one proceeding because they involved the same defendant, Smith.

On August 11, 1988, Smith was arrested again, this time on grand theft charges that arose out of a fraudulent scheme to

obtain student loan proceeds. On June 1, 1989, Smith was convicted on these charges, sentenced, and placed on probation. Undeterred, Smith initiated another fraudulent scheme to obtain student loan proceeds while on probation. This second fraudulent scheme began in November of 1988 and ended when Smith was arrested in December of 1989. Smith admitted all counts of this second fraudulent scheme in a sworn affidavit and took full responsibility for his actions.

Because Smith embarked on this second fraudulent scheme after he was sentenced and placed on probation for the first fraudulent scheme and within two years of his release from imprisonment, the district court added three points to Smith's criminal history category under section 4A1.1(d)–(e) of the Sentencing Guidelines. The district court also added four points to Smith's criminal history by treating the two 1983 assaults as separate sentences for purposes of section 4A1.1(b) of the Sentencing Guidelines. Smith appeals the district court's interpretation and application of the Sentencing Guidelines. Because one of the issues presented in this case—interpretation of "relevant conduct" under the Sentencing Guidelines—was one of the issues briefed for en banc consideration in *United States v. Fine*, 946 F.2d 650 (9th Cir.1991), *reh'g en banc granted*, 963 F.2d 1258 (9th Cir.1992), we deferred submission of this appeal pending the resolution of *Fine*. *Fine* was issued on September 14, 1992. *United States v. Fine*, 975 F.2d 596 (9th Cir.1992) (en banc).

## II. Standard of Review

■ We review de novo the district court's interpretation and application of the Sentencing Guidelines. *United States v. Howard*, 894 F.2d 1085, 1087 (9th Cir.1990); *United States v. Williams*, 891 F.2d 212, 214 (9th Cir.1989), *cert. denied*, 494 U.S. 1037, 110 S.Ct. 1496, 108 L.Ed.2d 631 (1990).

## III. Mootness

■ Before considering the merits of this appeal, we must address the question of whether this case is moot. Although neither party has raised this issue, we are obligated to determine whether we have jurisdiction to consider issues presented on appeal. *See United States v. Morales*, 898 F.2d 99, 101 (9th Cir.1990).

■ While this appeal was pending, Smith completed his term of imprisonment and was released. However, Smith's sentence also included a three-year term of supervised release. The result of this appeal affects this aspect of Smith's sentence, because he would be entitled to an earlier end to his term of supervised release if we agree with his argument that he should have been sentenced to a shorter term of imprisonment. Because our decision could affect Smith's term of supervised release, this case is not moot. *United States v. Lira–Barraza*, 941 F.2d 745, 746 n. 1 (9th Cir.1991) (en banc).

## IV. Relevant Conduct Under the Sentencing Guidelines

■ Smith's first contention is that the district court erred in its calculation of his criminal history category by adding three points because Smith committed his offense while on probation for another crime and within two years of release from imprisonment. U.S.S.G. § 4A1.1(d)–(e). Although the second fraudulent scheme lasted through October of 1989, Smith correctly indicates that the counts to which he pleaded guilty (two, three, and four) involved acts that took place prior to June 1, 1989, the date on which he was sentenced and released on the first fraudulent scheme. Based on these dates, Smith argues that section 4A1.1(d)–(e) is inapplicable to the calculation of his criminal history.

Smith's indictment included eight counts, all related to his fraudulent scheme to obtain student loan proceeds. The eight counts specify certain criminal acts that took place between November 1988 and October 1989. While it is true that the crimes to which Smith actually pleaded guilty involved acts that took place prior to June 1, 1989, several of the acts included in the indictment's other counts took place after that date.

■ The application notes to sections 4A1.1(d) and (e) contain identical introductory language that defines "instant offense" by reference to the term "relevant conduct." Read together, the notes state that "[three] points are added if the defendant committed any part of the instant offense (i.e., relevant conduct) while under any criminal justice sentence ... [and] less than two years following release...." U.S.S.G. § 4A1.1 comment. (nn. 4–5). Smith asserts that "instant offense" is necessarily limited to the offense of conviction—the crime to which he pleaded guilty. The government contends that the district court is allowed to consider all acts from the indictment constituting "relevant conduct," as defined by the Sentencing Guidelines. Based on a straightforward interpretation of the Sentencing Guidelines, we conclude that the government's contention is correct and that the district court properly applied the Sentencing Guidelines.

The application notes clearly allow the district court to consider "relevant conduct" in considering the criminal history score under section 4A1.1(d)–(e). Although Smith argues that "relevant conduct" is limited to conduct that is part of the offense of conviction, the plain language of the Sentencing Guidelines demonstrates that the term "relevant conduct" extends to acts that are part of the same general criminal scheme.

By defining conduct relevant to the instant offense pursuant to section 1B1.3, application note 8 to section 4A1.2 demonstrates that conduct relevant to the instant offense includes conduct related to, but not part of, the offense of conviction. *See* U.S.S.G. § 4A1.2 comment. (n. 8). Section 1B1.3 defines relevant conduct, in part, as "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction...." U.S.S.G. § 1B1.3(a)(2). The application note explicitly provides that "multiple counts of conviction are not required" for acts to be counted in "such acts or omissions." U.S.S.G. § 1B1.3, comment. (n. 2). All acts included in Smith's indictment, including those to which Smith did not plead guilty, were part of Smith's com-

mon fraudulent scheme. Under the Sentencing Guidelines, all such acts are thus part of Smith's relevant conduct and the district court properly considered them in determining the applicable time period for purposes of section 4A1.1(d)–(e).

This court explicitly adopted this interpretation of the Sentencing Guidelines in *United States v. Fine*, 975 F.2d 596 (9th Cir.1992) (en banc). Specifically, in *Fine*, as here, the court considered the relevant conduct provisions together with the fraud and grouping provisions, and concluded that:

> The relevant conduct provisions ..., taken together with the fraud and grouping provisions, mean that conduct which was part of the scheme is counted, even though the defendant was not convicted of crimes based upon the related conduct.... The words "as the offense of conviction" in the relevant conduct guideline necessarily imply that acts which are not included in the counts of conviction may be relevant conduct if the acts are part of a common plan or scheme or the same course of conduct.... The issue is nailed down firmly with the application note explicitly providing that "multiple convictions are not required" on the multiple counts.

*Id.* at 600. Thus, the main thrust of Smith's argument is foreclosed by this court's decision in *Fine*.

Nevertheless, Smith contends that we should ignore the clear guidance of the Sentencing Guidelines and argues that section 1B1.3(b) prohibits this court from using section 1B1.3(a) to define conduct relevant to the instant offense. However, section 1B1.3(b) merely states that, for chapter four, factors "that establish the guideline range shall be determined on the basis of the conduct and information specified in the [chapter four] guidelines." U.S.S.G. § 1B1.3(b). In defining "instant offense" for purposes of determining the applicable time period, chapter four specifically references section 1B1.3 to make clear that conduct relevant to the instant offense includes conduct from the same common scheme as the offense of conviction. *See*

§§ 4A1.2 comment. (n. 8), 1B1.3(a)(2). In this case, "the conduct and information specified in the [chapter four] guidelines" is "relevant conduct" as defined by section 1B1.3. U.S.S.G. § 1B1.3.

Any reliance by Smith on the background commentary to section 1B1.3 is similarly misplaced. Although the background commentary does state that section 1B1.3 is not "necessary with respect to Chapter[ ] Four ... because the guidelines in [chapter four] are explicit as to the specific factors to be considered," when read together with section 1B1.3(b), this language simply makes clear that section 1B1.3 is not applied automatically in determining the criminal history category as it is when determining the offense level. This language does not prohibit the use of section 1B1.3 in determining the criminal history category when chapter four specifically defines "relevant conduct" according to section 1B1.3. *See* §§ 4A1.1 comment. (nn. 4–5), 4A1.2 comment. (n. 8). Section 1B1.3(b) and the accompanying background commentary do provide that the rules of construction under 1B1.3(a) concerning relevant conduct do not necessarily apply in chapter four to determine the criminal history category. But when chapter four specifically defines the term "instant offense" by reference to "relevant conduct" as defined in section 1B1.3, we are free to use section 1B1.3 as the drafters of chapter four intended. Thus, neither faithful interpretation of the Sentencing Guidelines nor this court's decision in *Fine* permits Smith's interpretation of the Sentencing Guidelines.[1]

Finally, Smith cites *United States v. Castro–Cervantes*, 927 F.2d 1079 (9th Cir. 1990), for the proposition that dismissed counts cannot be used for sentencing purposes. This court explicitly rejected this broad reading of *Castro–Cervantes* in *Fine.* We reiterate that rejection here.

As was clarified in *Fine*, application of the principle of *Castro–Cervantes*—that a court should not accept a plea bargain and then later count dismissed charges in calculating the defendant's sentence—is limited to those situations involving an upward departure on account of non-groupable offenses. *Fine*, 975 F.2d at 602. Because this case does not involve an upward departure on account of non-groupable offenses, the district court's actions are not inconsistent with *Castro–Cervantes.*

Unlike the offense in *Castro–Cervantes* (robbery), a fraudulent scheme like the one perpetrated by Smith is punished as one offense whether there are three counts or fifty counts. *See* U.S.S.G. § 3D1.2(d) & comment. (n. 6). The entire fraudulent scheme is treated as one offense, and the base offense level is increased according to the monetary amount of the fraud. *See* U.S.S.G. § 2F1.1. The district court properly applied these guidelines in the proceedings below. The district court did not use the dismissed counts to calculate the offense level; they would not have affected the offense level even if they had been used. Smith does not argue that the district court attempted to depart from the Sentencing Guidelines or increase his sentence because of the number of dismissed counts as did the district court in *Castro–Cervantes.*

Rather than depart from the Sentencing Guidelines, the district court simply applied the Sentencing Guidelines in a straightforward manner. In computing the criminal history category, the Sentencing Guidelines require the district court to add three points if part of the instant offense (i.e., any part of the common fraudulent scheme) is committed while the defendant is on probation and within two years after release from imprisonment. *See* U.S.S.G. §§ 4A1.1(d)–(e) & comment. (nn. 4–5), 4A1.2 comment. (n. 8), 1B1.3(a)(2). It is undisputed that part of Smith's fraudulent scheme took place within two years of his release and while he was on probation. Thus, the district court added three points to Smith's criminal history category. The district court applied the Sentencing Guidelines to

---

1. Moreover, the United States Sentencing Commission recently amended U.S.S.G. section 6B1.2(a) to make clear that "the dismissal of a charge or a plea agreement not to pursue a potential charge" does not prevent the sentencing use of the relevant conduct underlying the charge. This amendment became effective November 1, 1992.

determine the applicable time period for the instant offense, but did not use the number of the dismissed counts to justify an upward departure from the Sentencing Guidelines. This renders *Castro–Cervantes* inapt.

Given the district court's straightforward application of the Sentencing Guidelines, Smith's argument that use of section 1B1.3(a) to define the instant offense is "unfair" and "violates the spirit if not the letter of the [plea] bargain" is unconvincing. *Castro–Cervantes,* 927 F.2d at 1082. Ignoring Smith's criminal history was never part of the bargain; nothing in the record or the briefs suggests that the government agreed to overlook Smith's criminal history because he pleaded guilty to three of the eight counts. Smith was convicted of grand theft arising from a fraudulent scheme to obtain student loan proceeds and was sentenced on June 1, 1989. Almost immediately after his release, and while he was on probation for the previous grand theft conviction, Smith initiated another fraudulent scheme to obtain student loan proceeds. As required by the Sentencing Guidelines, Smith's sentence should reflect his persistence in committing fraud. In arguing for a contrary result, Smith, as did the defendant in *Fine,* seeks a sentence below what the Sentencing Guidelines require. However, as this court stated in *Fine:*

> A person who pleads guilty under the sentencing guidelines may be entitled to expect that he will receive the guidelines sentence.... The reasonable expectation upheld by *Castro–Cervantes,* of a sentence in accord with the guidelines, was honored by the sentence imposed on Fine. He seeks a sentence below what the guidelines require, which would be contrary to the expectation of a sentence in accord with the guidelines.

*Fine,* 975 F.2d at 602. Here, as did the court in *Fine,* the district court faithfully applied the Sentencing Guidelines and properly sentenced Smith. Under *Castro–Cervantes,* Smith is entitled to, and can expect, no more.

Moreover, because he accepted responsibility, fully admitted to all counts in a sworn affidavit, and pleaded guilty to the fraudulent scheme, Smith reduced his total offense level by two points and his sentence by six months. *See* U.S.S.G. Ch. 5, Pt. A (a reduction from offense level 11 to 9 under criminal history category V reduces the sentence by six months). Having thus received the benefit of his plea bargain, Smith cannot press for more here.

## V. Related Cases

◼ Smith's second contention is that the district court erred in its calculation of his criminal history category by determining that the two convictions in 1983 should be treated as separate sentences. As discussed above, the two separate sexually motivated attacks involved different victims, dates, and locations and did not stem from a common scheme. *See United States v. Davis,* 922 F.2d 1385, 1389 (9th Cir.1991) ("a common *modus operandi* is not enough to demonstrate a single common scheme or plan") (citing *United States v. Jones,* 899 F.2d 1097, 1101 (11th Cir.), *cert. denied,* 498 U.S. 906, 111 S.Ct. 275, 112 L.Ed.2d 230 (1990)). The two assaults apparently were included in the same indictment and were prosecuted under the same case number for the sake of convenience, not because they factually were related. Smith was sentenced to a four month jail term for each assault, the sentences to run consecutively.

Smith and the government agree that the issue is whether Smith's prior convictions were "related" as defined in section 4A1.2(a)(2). Because "[p]rior sentences imposed in related cases are to be treated as one sentence," Smith argues that the two sexual assaults must be considered related because they were "consolidated for ... sentencing." U.S.S.G. § 4A1.2(a)(2) & comment. (n. 3). We conclude that Smith's two assaults were unrelated and that the district court did not err in counting them separately in its calculation of Smith's criminal history. Our conclusion rests on this court's holding that " 'factually unrelated' cases" need not be treated as one combined sentence under section

4A1.2(a)(2). *Davis,* 922 F.2d at 1389 (quoting *United States v. Gross,* 897 F.2d 414, 416 (9th Cir.1990)). In Smith's case, it is clear that his 1983 sexual assaults factually were unrelated and distinct from each other; they occurred on separate occasions and involved separate victims. Therefore, the district court correctly considered them separately under section 4A1.1(b).

■ We recognize that this court's decision in *United States v. Anderson,* 942 F.2d 606, 612–14 & n. 5 (9th Cir.1991) (en banc), effectively overruled *Gross* in part by requiring courts always to "consider the commentary" and to "construe a guideline and its commentary so as to be consistent, if that is possible." *Id.* at 612; *see also United States v. Palmer,* 946 F.2d 97, 99 (9th Cir.1991) (finding that *Anderson* overrules *Gross* in part). We believe, however, that the narrower holding from *Davis* is still good law: factually unrelated cases are not related for purposes of section 4A1.2(a)(2) absent a showing that the sentencing court treated the cases as involving a single consolidated offense. *See Davis,* 922 F.2d at 1390–91 (noting that concurrent sentences, standing alone, do not indicate that the cases were consolidated for sentencing). The record in this case indicates nothing more than that a single sentencing proceeding was used for reasons of judicial economy. Indeed, by imposing consecutive sentences, the sentencing court in Smith's sexual assault cases indicated that it viewed the sexual assaults as distinct offenses. The district court did not err by treating Smith's factually unrelated sexual assaults as unrelated for purposes of section 4A1.2(a)(2).

### VI. Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.