**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert SHACKLEY, Defendant–
Appellant.**

**No. 92–10490.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 6, 1993.

Decided June 9, 1993.

Donna M. Gray, Asst. Federal Public Defender, Honolulu, HI, for defendant-appellant.

Mark E. Recktenwald, Asst. U.S. Atty., Honolulu, HI, for plaintiff-appellee.

Before: GOODWIN, TANG, and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

Robert Shackley appeals the sentence imposed following his conviction of violating 26 U.S.C. § 5861(d) for possession of an unregistered, sawed-off shotgun. The sentence was enhanced by the district court's consideration of related conduct. We affirm.

## FACTS

In December 1991, Shackley was an employee of Volcano House, a hotel in Hawaii Volcanoes National Park. Early in the morning of December 23, he was talking in the living room to Thomas Rivera, another Volcano House employee. A third employee, Brian Miller, was awakened by their talk and came into the living room to ask them to be quiet. Miller returned to his room. Rivera said that Shackley yelled that he was "going to put him [Miller] away." Tracy Kaimimoku, Shackley's girlfriend, was asleep in the room she shared with Shackley when she was awakened by Shackley pulling a shotgun out from under the mattress where he kept it. She followed Shackley into Miller's room and saw him holding Miller by the hair. When initially questioned by park rangers she said that Shackley was pointing the muzzle of the gun at Miller. She later stated that she was misquoted by the rangers and that Shackley was holding the gun like a club. After retrieving the gun from Shackley, Kaimimoku hid it in their room.

Park rangers responded to Miller's complaint and found Shackley and Kaimimoku in their room. The rangers told them they were investigating a complaint involving a shotgun. Shackley told them that the gun was no longer there, that his friend had taken it to "my residence at Hawaiian Acres." The rangers searched the room and found the gun.

According to Kaimimoku, Shackley had drunk ten beers and smoked marijuana earli-

er that night. According to the rangers, Shackley had bloodshot eyes but did not have difficulty speaking clearly and did not appear to be physically or mentally impaired.

## PROCEEDINGS

On December 27, 1991, Shackley was indicted on two counts, first for assault on Brian Miller by means of a sawed-off shotgun in violation of 18 U.S.C. § 113(c), and, secondly, possession of an unregistered sawed-off shotgun in violation of 26 U.S.C. 5861(d). On March 20, 1992, Shackley entered into a plea bargain agreement by which he agreed that he was guilty of possessing a sawed-off shotgun in violation of 26 U.S.C. § 5861(d). The agreement stated that he understood that the penalties for the offense for which he pleaded guilty included up to ten years imprisonment. The agreement also specified as follows:

10. Pursuant to Section 2K2.1(b)(5) of the Sentencing Guidelines, the defendant understands that the government will argue that the circumstances of the alleged assault charged in Count 1 of the Indictment should be considered by the judge as a specific offense characteristic for the purposes of sentencing the defendant on Count 2. The government understands that the defendant will take the opposing position at sentencing on this issue.

11. The parties agree that notwithstanding the parties' Agreement herein, the Court is not bound by any stipulation entered into by the parties but may, with the aid of the presentence report, determine the facts relevant to sentencing.

12. Pursuant to Section 6B1.4 of the Sentencing Guidelines, the parties identify the following facts that are in dispute for the purpose of sentencing of Defendant in connection with this matter:

a. The circumstances of the alleged assault charged in Count 1 of the indictment.

At the plea hearing the district court questioned Shackley about his understanding of the agreement. Shackley said he had reviewed it with his lawyer and had read it himself about five times. The court then asked the prosecutor to set out the essential elements of the agreement. The prosecutor summarized orally the written provisions set out above. The court asked Shackley if he agreed with the prosecutor's statement and Shackley replied that he understood what had been said and agreed that it had been accurately stated.

The court postponed sentencing in order to receive a presentence report. The presentence report gave Rivera's, Kaimimoku's and Miller's account of the incident. It also reported an interview with Shackley in which he said that he "merely meant to scare Miller" and was "sorry he used the weapon to threaten Miller." The presentence report recommended an increase of four in the offense level pursuant to U.S.S.G. § 2K2.1(b)(5) which reads as follows: "If the defendant used or possessed any firearm or ammunition in connection with another felony offense . . ., increase by 4 levels."

At the sentencing hearing Shackley challenged the presentence report's recommendation that there be a four-level adjustment in the base offense because of his assault on Miller. Shackley argued that because of his intoxication the night of the incident he lacked the specific intent necessary for an assault. He added that the only evidence of his intent was double-hearsay—the rangers' report of what Kaimimoku had first said. Miller, the victim, had left the island. The only evidence against Shackley that could be produced in court was his girlfriend's now retracted story.

The court chose to believe the rangers as to Shackley's state of mind so that the court found by the preponderance of the evidence that he was not intoxicated and could form an intent. The court further found as to Shackley's use of the gun in connection with Miller that, "whether he intended to club him with it, or shoot him, or beat him over the head with the butt of the barrel, he didn't actually get a chance to commit all of that, but he apparently engaged in [that] conduct, and really that's the only evidence in the record." The prosecutor pointed out that Shackley was holding Miller by the hair while he held the gun. The court found that Shackley had the intent to assault Miller and

was assaulting him. The court added four points to Shackley's offense level, making it 20. His criminal history category was 2. The sentencing range was, therefore, 37 to 46 months. The court sentenced him to 37 months.

Shackley appeals his sentence.

## ANALYSIS

*First.* Shackley contends that under *United States v. Castro–Cervantes,* 927 F.2d 1079 (9th Cir.1990), it was error for the district court to accept the plea bargain as reflecting the essential seriousness of his offense, permit the dismissal of the assault count, and yet take into account the assault when imposing sentence. The pivotal point of *Castro–Cervantes,* however, was that "[a] plea bargain is governed by contract principles." *Id.* at 1082. This teaching, as well as the continued vitality of *Castro–Cervantes,* was reaffirmed in *United States v. Fine,* 975 F.2d 596 (9th Cir.1992) (en banc).

In the present case the plea agreement was explicit in stating that the government reserved the right to prove at sentencing that Shackley had committed the assault. No violation of the bargain occurred when the government came forward to prove this conduct. The defendant was on notice that the government might convince the court that only by taking the assault into account would the seriousness of the defendant's behavior be adequately considered. See *Castro–Cervantes* 927 F.2d at 1082.

*Second.* Shackley contends that an assault was not proved by the preponderance of the evidence. The court had before it Kaimimoku's statement that Shackley was holding Miller by the hair with a gun in his hand. There was nothing in this statement that showed Shackley was pointing the gun at Miller. But for one person to hold another person by the hair while having in hand an object that could either shoot him or strike him was sufficient to put that person in fear of bodily injury and putting such a person in such a fear constitutes the crime of assault. As to Shackley's ability to form a specific

intent, the district court was free to believe the rangers' statement.

*Third.* Shackley also argues that for the increase required by the Guidelines § 2K2.1(b)(5), the firearm must have been used as a firearm not as a club. He cites no authority for this proposition. The Guidelines explicitly refer not only to use of the firearm but to possession of it. It was sufficient for Shackley to hold the gun for the Guideline increase to apply.

**AFFIRMED.**