**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert FINE, Jr., Defendant–Appellant.**

**No. 90–50280.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 18, 1992.

Decided Sept. 14, 1992.

Michael J. Treman, Santa Barbara, Cal., for defendant-appellant.

Stephen A. Mansfield, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Brian H. Getz, San Francisco, Cal., for Northern California Criminal Trial Lawyers Ass'n, as amicus curiae.

Before: WALLACE, Chief Judge, and HUG, SCHROEDER, FLETCHER, FARRIS, D.W. NELSON, BEEZER, WIGGINS, KOZINSKI, THOMPSON, and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

We revisit here the issue of what conduct is relevant to a sentence imposed under the sentencing guidelines. Fine was indicted for fourteen counts relating to mail fraud. He pleaded guilty to two. The other twelve were dismissed. The sentencing guidelines make the prison time depend on the amount of money involved in the scheme. Can the money involved in the twelve dismissed counts be considered? Yes.

We had, in the panel decision which we now reconsider, reversed the sentence on two grounds, one of which was that the court had improperly aggregated the amount of the loss in the dismissed counts with the amount in the two counts which Fine admitted. *United States v. Fine*, 946 F.2d 650, 651–52 (9th Cir.1991). The panel decision interprets *United States v. Castro–Cervantes*, 927 F.2d 1079 (9th Cir.1990) (amended opinion), in a way which puts it in conflict with *United States v. Turner*, 898 F.2d 705 (9th Cir.), *cert. denied*, 495 U.S. 962, 110 S.Ct. 2574, 109 L.Ed.2d 756 (1990), and in following that construction of *Castro–Cervantes*, the panel reached a conclusion which we are unable to reconcile with *Turner*. Our reconsideration en banc is limited to the question of whether the dis-

trict court could properly treat the amount of loss in the dismissed counts as relevant conduct for sentencing purposes. We read *Castro–Cervantes* more narrowly than the panel, and see no intra-circuit conflict between *Castro–Cervantes* and *Turner*, so we need not reevaluate *Castro–Cervantes*. We reconsider and withdraw part I of the panel decision and affirm the district court judgment with regard to relevant conduct.[1]

## I. Facts.

Fine stole money by pretending to be someone else, borrowing money in the other person's name and mortgaging the other person's property as security, and getting the other person's check. Fine admitted the parts of the fraud involving Anosh Toufigh. He borrowed $195,000 from Imperial Home Mortgage by signing a note and other loan documents in the name of Anosh Toufigh, and using the real Mr. Toufigh's previously unencumbered real estate as security for the loan. The real Mr. Toufigh knew nothing about the transaction. Imperial Home Mortgage recorded a deed of trust against the real Mr. Toufigh's property to secure $195,000, and sent a check for $113,550, evidently the loan amount less various fees and advance repayment installments, made out to Mr. Toufigh at the mail drop used by Fine. The check cleared, but the real Mr. Toufigh did not get the money.

The dismissed counts of the indictment charged that Fine had done the same thing, using the same technique, with property of Robert Rosenberg and Jacob Maarse. The loss caused by Fine, if only the Toufigh loan were counted, would be $195,000. If the Rosenberg and Maarse loans are counted too, then the loss was $613,000. Fine used lenders who did not require him to come in personally to sign the papers. He got caught because a lender noticed that the same addresses, phone numbers, occupation, employers' addresses and other information were used in the Maarse, Toufigh and Rosenberg loan applications. The lender caused official surveillance to be in place when Fine picked up the Maarse check at his mail drop and shouted to his companion in the car, "I've got it, the check is here."[2]

Fine was indicted for ten counts of mail fraud, in violation of 18 U.S.C. § 1341, and four counts of use of fictitious names for the purpose of perpetrating a fraud, in violation of 18 U.S.C. § 1342. He pleaded guilty to two counts, the Toufigh mail fraud and use of Toufigh's name, pursuant to a plea agreement under Federal Rule of Criminal Procedure 11(e)(1)(A). The government promised to dismiss the remaining counts of the indictment, but there were "no other promises included as part of this agreement." At the change of plea proceeding, the judge advised Fine of the entire scheme as charged in the indictment, including the Rosenberg and Maarse frauds. Fine's attorney said "[t]he nature of the plea only goes to two counts which relate to Mr. Toufigh. It's my client's intention only to admit his involvement with regard to that specific individual and two counts...." Government counsel responded that the other counts "relate to the same mail fraud scheme." The judge made it clear that Fine was not by his plea admitting the facts charged regarding the Rosenberg and Maarse loans, but that the sentencing guidelines would apply, with a result not then predictable. The judge told Fine that he could be sentenced to a maximum of five years on each count, consecutively.

The court found at sentencing that Fine had applied for the Rosenberg and Maarse loans as part of his fraudulent scheme, so all $613,000 should be used to determine the offense level, not just the $195,000

1. Parts II–V of the panel opinion are unaffected by this decision. The panel opinion vacated Fine's sentence and remanded for resentencing. On remand, the district court will reduce Fine's criminal history category, as required by Part IV of the panel opinion, and recalculate his sentence accordingly.

2. The offenses to which Fine pleaded guilty were committed in September 1989, and he was sentenced in May 1990. The guidelines were amended effective November 1, 1989, but Fine was given the benefit of the more lenient guidelines in effect at the time of his offense. U.S.S.G. amendment 154.

obtained by using Toufigh's name. Fine objected to considering fraud other than that in the two counts to which he pleaded guilty, but did not offer any evidence contradicting the account in the presentence report of the other fraud. The judge found, based upon the presentence report, that the base offense level including the loss alleged in the dismissed counts was appropriate. The evidence showed that Fine committed the Rosenberg and Maarse frauds, and Fine does not claim otherwise, or suggest error in the factual finding, even though he did not plead guilty to those counts. His challenge is legal, not factual, and goes to whether the court could properly consider the dismissed counts, even if the court properly found that he committed the crimes charged in them.

Fine was sentenced to 50 months imprisonment on each count concurrently, plus fine, restitution and supervised release. The offense level under the guidelines was 12 if the loss was $100,000 to $200,000, or 14 if $500,000 to $1,000,000. The two level difference, after the other computations, caused Fine to be sentenced at offense level 18, criminal history category IV, for a sentencing range of 41 to 51 months.[3] Without the two levels for the Rosenberg and Maarse money, the range would have been 33 to 41 months. The other counts were dismissed pursuant to the agreement, after sentence was imposed.

## II. Standard of Review.

■ The legality of a sentence is reviewed de novo. *United States v. Turner,* 898 F.2d 705, 708 (9th Cir.), *cert. denied,* 495 U.S. 962, 110 S.Ct. 2574, 109 L.Ed.2d 756 (1990). We accept the district court's findings of fact unless they are clearly erroneous, and give due deference to the district court's application of the guidelines to the facts. 18 U.S.C. § 3742(e); *Turner,* 898 F.2d at 708.

## III. Relevant Conduct Under the Guidelines.

The guidelines, interpreted in light of the application notes, are unambiguous.[4] The fraud section of the guidelines says, in an application note relating to multiple count indictments, that "[t]he cumulative loss produced by a common scheme or course of conduct should be used in determining the offense level, *regardless of the number of counts of conviction.*" U.S.S.G. § 2F1.1, comment. (n. 6) (emphasis added). The note cross references Chapter 3, Part D, which concerns grouping of multiple counts. The intended loss is used if larger than the actual loss, as when the defendant fails in all or part of the fraud. U.S.S.G. § 2F1.1, comment. (n. 7).

The cross reference to Chapter 3, Part D provides a direction that counts are grouped together if "the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm...." U.S.S.G. § 3D1.2(d). The grouping provisions of the guidelines generally provide that some offenses are accumulated and treated as a single offense even if charged in multiple counts. U.S.S.G. Ch. 3, Part D, introductory commentary. The grouping guideline lists the kinds of offenses to be grouped, including fraud under § 2F1.1.

The relevant conduct guideline, § 1B1.3, controls whether the dismissed counts should be used to measure the amount of loss caused by Fine's fraud. It provides that where the guideline specifies more than one base offense level, as the fraud guideline does based on amount of money, and grouping is required under § 3D1.2(d), the offense level must be determined by "all such acts and omissions that were part of the same course of conduct or common scheme or plan *as the offense of conviction.*" U.S.S.G. § 1B1.3(a)(2) (emphasis

---

3. The panel held that the district court erred when it calculated Fine's criminal history category. We do not disturb this portion of the panel's opinion.

4. The application notes help to determine the Commission's intent, and this commentary is "entitled to considerable weight." *United States v. Anderson,* 942 F.2d 606, 612 (9th Cir.1991) (en banc).

added). The application note explicitly provides that *"multiple convictions are not required"* for acts to be counted in "such acts or omissions." U.S.S.G. § 1B1.3, comment. (n. 2) (emphasis added).

█ The relevant conduct provisions quoted above, taken together with the fraud and grouping provisions, mean that conduct which was part of the scheme is counted, even though the defendant was not convicted of crimes based upon the related conduct. The emphasized words in the fraud application note, "regardless of the number of counts of conviction," necessarily imply that the loss to be counted is not limited by the counts of conviction. The words "as the offense of conviction" in the relevant conduct guideline necessarily imply that acts which are not included in the counts of conviction may be relevant conduct if the acts are part of a common plan or scheme or the same course of conduct. No other reading of "regardless" and "as" is possible. The issue is nailed down firmly with the application note explicitly providing that "multiple convictions are not required" on the multiple counts.

Under the sentencing guidelines, the proved criminal conduct of the offender, charged or not, generates a measured impact on the sentence. Before the guidelines, the sentencing judge had "broad latitude" to consider evidence, and could "consider evidence of counts for which an indictment has been dismissed." *United States v. Lewis*, 862 F.2d 748, 750 (9th Cir.1988), *cert. denied*, 489 U.S. 1032, 109 S.Ct. 1169, 103 L.Ed.2d 227 (1989). The district court's discretion to consider or ignore relevant conduct was then largely unreviewable. *United States v. Restrepo*, 946 F.2d 654, 655 (9th Cir.1991) (en banc), *cert. denied*, —— U.S. ——, 112 S.Ct. 1564, 118 L.Ed.2d 211 (1992). Had Fine been sentenced before the guidelines the judge would have been free to impose a sentence ranging from probation up to ten years. A long sentence could have been based upon conduct which Fine did not admit and which was not embraced by the counts of conviction. On the other hand, the court could have considered any mitigating cir-

cumstances it deemed appropriate to give a minimum sentence. *Lewis*, 862 F.2d at 750. The guidelines prevent the court from ignoring Fine's proved conduct in the dismissed counts, so that the sentence reflects the crimes he actually committed, but limit the conduct's impact on his sentence, keeping it within the prescribed range.

## IV. The Plea Bargain.

█ The more significant argument raised by Fine has to do with his plea bargain. The colloquy during his change of plea suggested that Fine wanted to be sentenced only for the Toufigh money, $195,000, not for the Rosenberg and Maarse money too. The difference between a $195,000 thief and a $613,000 thief under the guidelines was worth roughly 8 to 10 months in prison.

But the colloquy also shows that the government promised to do no more for Fine than dismiss the other counts. Fine was explicitly told that he had no other promises, and that government counsel regarded the dismissed counts as relating to the same scheme. The plea was pursuant to Federal Rule of Criminal Procedure 11(e)(1)(A), a plea of guilty in exchange for which the government promises to "move for dismissal of other charges." Few things in a change of plea proceeding are as salient to the participant as the distinction between an 11(e)(1)(A) agreement for dismissal of charges, an 11(e)(1)(B) agreement for a nonbinding recommendation for a specific sentence, and an 11(e)(1)(C) agreement for a specific sentence. A defendant generally needs more bargaining power, such as he may obtain from substantial weaknesses in the government's proof, or valuable cooperation against other defendants, to negotiate the more valuable bargains, such as an 11(e)(1)(C) agreement. Fine did not obtain such an agreement, and he was told that the judge could sentence him to anything up to 10 years to serve, subject to the guidelines. He may have wanted to be sentenced for only $195,-000 of his crime, but he did not succeed in negotiating an agreement so limiting the judge. We are unpersuaded by Fine's and

the amicus curiae's argument that the guidelines entitled Fine to have the judge sentence him as though $418,000 of his fraud had not happened.

■ The sentencing guidelines include standards for acceptance of plea agreements, which differ for 11(e)(1)(A), 11(e)(1)(B), and 11(e)(1)(C) agreements. For 11(e)(1)(A) agreements, dismissal of some charges, the court may accept the agreement only if "the remaining charges adequately reflect the seriousness of the actual offense behavior." U.S.S.G. § 6B1.2(a). Fine and the amicus would have us reason that (1) the judge must have decided that $195,000 adequately reflected the seriousness of the fraud; (2) the judge should have rejected the plea bargain if he thought sentencing should be based on $613,000; (3) since the judge accepted the dismissal of the other counts, he was limited to a sentence based on $195,000. We think this infers too much, from the guideline and from the acceptance of the plea bargain.

The purpose of the 6B1.2(a) plea bargaining standard is to avoid inappropriate lenience. Congress wanted sentencing judges to "review charge-reduction plea agreements to ensure that such agreements do not result in undue leniency or unwarranted sentencing disparities." S.Rep. No. 225, 98th Cong., 1st Sess. 167 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3350. That was the history behind the delegation to the Sentencing Commission of authority to promulgate policy statements for exercise by the district court of its authority to accept or reject plea agreements. 28 U.S.C. § 994(a)(2)(E). The guidance was to "assure that judges can examine plea agreements to make certain that prosecutors have not used plea bargaining to undermine the sentencing guidelines." S.Rep. No. 225, 98th Cong., 1st Sess. 63 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3246.

The plea agreement did not implicate the § 6B1.2(a) policy statement or its underlying statutory purpose. Fine committed a major fraud and pleaded guilty to one. It was not as though he had been charged with ten counts of armed robbery and one count of use of a false name, and pled only to use of a false name. Had that been so, the remaining charge might not have reflected the seriousness of the actual offense behavior. Nor would the plea prevent the court from imposing an appropriate sentence. The guidelines provided for the court to group the $195,000 in the counts of conviction with the remaining $418,000, and provided that the remaining counts were relevant conduct, so the sentence under the guidelines for the counts of conviction would reflect the actual offense conduct. No undue lenience or disparity would ensue, as it might have if the plea agreement limited the court to a sentence which people who committed $1500 frauds might receive. Fine pled to exactly the type of crime that he actually committed, and the plea agreement did not reduce his sentence exposure below that called for under the guidelines for the actual offense conduct.

We held in *United States v. Turner*, 898 F.2d 705, 711 (9th Cir.), *cert. denied*, 495 U.S. 962, 110 S.Ct. 2574, 109 L.Ed.2d 756 (1990), that quantities of drugs in dismissed counts were properly aggregated with the counts of conviction, as relevant conduct to determine the offense level, even though the counts were dismissed pursuant to a plea bargain. We took note in *Turner* of the language in the application note, that "multiple convictions are not required." *Id.* (citing U.S.S.G. § 1B1.3, comment. (n. 2). We found that Turner was responsible for the drugs in the dismissed counts based upon evidence in the trial of codefendants. In this case, the district court relied on evidence summarized in the presentence report, but that distinction makes no difference. Likewise, in *United States v. Arias–Granados*, 941 F.2d 996, 998–99 (9th Cir. 1991), a greater offense was pled down to a lesser, but conduct in the real, greater offense was properly used under a guideline providing for enhancement of the base offense level.

We rejected in *Arias–Granados* the proposition that "every theoretical plea to a lesser charge must result in some benefit

to the hypothetical defendant." *Id.* at 998. We found nothing dishonest or contrary to the plea agreement, because the "pleas were made with their eyes wide open and with knowledge of the relevant Guidelines provisions; there was no agreement by the government that the provisions of the Guidelines would not be followed." *Id.* at 999. That is just what happened here. The judge told Fine he would be sentenced in accord with the guidelines, up to the maximum of ten years to serve. For Fine to force the judge to take it or leave it, on a sentence based only on $195,000, he would have needed an 11(e)(1)(C) agreement, but he did not have one. Had there been any misunderstanding concerning the meaning of the bargain, Fine could have moved to withdraw his plea following receipt of the presentence report, but he did not.

Fine and the amicus would have us find a conflict between these cases and *United States v. Castro–Cervantes,* 927 F.2d 1079 (9th Cir.1990) (amended opinion), and *United States v. Faulkner,* 952 F.2d 1066 (9th Cir.1991). We find none. Both cases involve departures and non-groupable offenses, so they are distinguishable from cases involving groupable offenses and no departure. *Castro–Cervantes* involved a departure from a guideline sentence of 30–37 months to 60 months based on dismissed bank robbery counts. *See Castro–Cervantes,* 927 F.2d at 1080–81. *Faulkner* also involved an upward departure for non-groupable dismissed bank robbery charges, and follows *Castro–Cervantes. See Faulkner,* 952 F.2d at 1068–70.

We said in *Castro–Cervantes* that the court "should not accept a plea bargain and then later count dismissed charges in calculating the defendant's sentence." *Castro–Cervantes,* 927 F.2d at 1082. Fine would have us apply that principle to his case. But the context, a departure upward on account of non-groupable offenses, distinguishes *Castro–Cervantes.* A person who pleads guilty under the sentencing guidelines may be entitled to expect that he will receive the guidelines sentence, not a sentence which departs upward. The guidelines put a cap on his exposure, usually well below the statutory maximum. In *Castro–Cervantes,* we recognized an implicit assurance that if the court accepted a plea bargain, then it would not depart upward from the sentence provided for by the guidelines. The reasonable expectation upheld by *Castro–Cervantes,* of a sentence in accord with the guidelines, was honored by the sentence imposed on Fine. He seeks a sentence below what the guidelines require, which would be contrary to the expectation of a sentence in accord with the guidelines.

The Second Circuit dealt with the same issue raised here, reconciling the plea bargaining guideline with the relevant conduct guideline, in *United States v. Quintero,* 937 F.2d 95 (2d Cir.1991). We find the Second Circuit analysis persuasive. Quintero pleaded guilty to one count of his indictment, for selling 28 grams of crack, but was sentenced on the basis of all four counts, 886 grams, under the relevant conduct guideline for groupable offenses. *Id.* at 95–96. The court stated:

> The relevant conduct guideline and the plea bargaining policy statement are readily reconcilable, once it is realized that the sentencing judge's assessment of the adequacy of the remaining counts is to be determined in light of the sentence authorized for those counts by all of the guidelines, including the relevant conduct guideline.

> Long prior to the sentencing guidelines it was settled that a sentence on a count of conviction could be based on conduct charged in dismissed counts.... Nothing in the Commission's plea bargaining policy statement indicates that the Commission intended to alter that pre-guidelines practice. It may well be that the precision introduced by the guideline system, calibrating the extent of punishment according to the extent of wrongdoing—in this instance the quantity of drugs distributed—has brought into sharp focus the significance of basing sentences on conduct charged in dismissed counts. If so, that simply illustrates that, for all the criticism the guidelines have attracted, one of their virtues is the illumination of practices and poli-

cies that were applicable in the pre-guidelines era, but that received less attention when sentences were only a generalized aggregation of various factors, many of which were frequently unarticulated.

*Id.* at 97. Our conclusion, that use of the dismissed counts to determine the offense level was proper, is in accord with the conclusions of all the other circuits which have considered this issue.[5]

Fine and the amicus raise the question of why anyone would plead to some counts in exchange for dismissal of others, if the sentence could reflect the dismissed counts. The implication is that if no rational person would make such an agreement, then use of the dismissed counts to affect the offense level is deceptive. But rational defendants have made these charge bargains for years, for many reasons, and the guidelines add a new, strong reason. Among the old reasons were that the defendant just did not feel that he was guilty of the dismissed counts, that he wished to avoid collateral consequences associated with them, wanted his conviction to sound less serious, or wanted to reduce his statutory maximum exposure. The guidelines may in some cases change the calculus of what is advantageous for a defendant. *See United States v. Ruelas–Armenta,* 684 F.Supp. 1048, 1051–52 (C.D.Cal.1988).

Under the guidelines, a defendant may sometimes find it advantageous to plead to all groupable counts, if he feels that he is guilty of all of them, in order to enhance his chances at a two level reduction for acceptance of responsibility. Or he may plead to some counts for dismissal of others, where he wishes to preserve the possibility of litigating the sentence instead of his guilt. For example, if a defendant is overcharged, that is, guilty but charged with more extensive criminal conduct than he committed, he may wish to plead guilty to what he did and seek the two level reduction for acceptance of responsibility, but put on evidence at sentencing to rebut the presentence report on what he did not do. He may wish to plead to some counts for dismissal of others, without committing himself to disputing the others, so that he can see in the presentence report what he will be up against.

Before the guidelines, the judge's discretion was so broad and the evidentiary burdens and need to articulate grounds for the sentence so attenuated that admitting the crime and trying the sentence might be a waste of time. But under the guidelines, had Fine been guilty of $195,000 worth of fraud but not $613,000, he could have adduced evidence at sentencing sufficient to limit the court to a sentence of 33 to 41 months, even if the judge's personal opinion were that Fine deserved 50 months, or 10 years. Though the presentence report is admissible evidence, it is largely hearsay, even remote hearsay at the second and third remove, so a defendant's evidence may be powerful in " 'its effect in convincing [the judge's] mind of the truth of the proposition asserted.' " *United States v. Restrepo,* 946 F.2d 654, 661 (9th Cir.1991) (en banc), (quoting *In re Winship,* 397 U.S. 358, 367–68, 90 S.Ct. 1068, 1074, 25 L.Ed.2d 368 (1970)), *cert. denied,* —— U.S. ——, 112 S.Ct. 1564, 118 L.Ed.2d 211 (1992).

---

**5.** *United States v. Wright,* 873 F.2d 437, 440–41 (1st Cir.1989) (rejecting the defendant's argument that he was deprived of the benefit of his bargain by the use of dismissed counts, because the plea agreement did not promise him a lower sentence); *United States v. Quintero,* 937 F.2d 95, 96–97 (2d Cir.1991); *United States v. Frierson,* 945 F.2d 650, 654–55 (3d Cir.1991) (rejecting the defendant's argument that he was deprived of the benefit of his bargain by the application of the relevant conduct guideline to a count dismissed pursuant to a plea bargain), *cert. denied,* —— U.S. ——, 112 S.Ct. 1515, 117 L.Ed.2d 651 (1992); *United States v. Williams,* 880 F.2d 804, 805–06 (4th Cir.1989) (rejecting the defendant's assertion that he was denied the benefit of his bargain); *United States v. Rodriguez–Nuez,* 919 F.2d 461, 464 (7th Cir.1990) (rejecting the contention that it was "fundamentally unfair" to apply § 1B1.3(a)(2) to a count dismissed pursuant to a plea bargain); *United States v. Scroggins,* 880 F.2d 1204, 1213–14 (11th Cir.1989) (holding that application of § 1B1.3(a)(2) to a dismissed count was not inequitable, because the plea bargain did not "impliedly preclude the district court from considering evidence" of the conduct charged in the dismissed count and the defendant "could have predicted" that the court would aggregate the conduct), *cert. denied,* 494 U.S. 1083, 110 S.Ct. 1816, 108 L.Ed.2d 946 (1990).

A plea to some charges in exchange for dismissal of others may sometimes produce little benefit, but it may be the best a defendant can get, if the prosecutor has a solid case. That does not mean we have to discover some principle of law which would enhance its value. The time when Fine was entitled to exclusive power to control whether he would go to prison and for how long was when he decided to steal the money. Once he stole the $613,000, that power properly passed to the courts. Plea bargaining is not a private contractual arrangement unaffected by the public interest. The public interest does not favor fictional minimization of crimes actually committed for purposes of sentencing. Under the guidelines, a "strong judicial hand" is necessary to protect the public interest. W. Wilkins & J. Steer, *Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines*, 41 S.C.L.Rev. 495, 500 (1990). Overly lenient plea bargains may induce innocent defendants to plead guilty, and may allow guilty defendants to escape deserved punishment.

### V. Equal Protection.

■ Fine argues that applying § 1B1.3(a)(2) to counts that are dismissed pursuant to a plea bargain violates his right to equal protection, because there is no rational basis for distinguishing between the types of offenses that are groupable under § 3D1.2(d) and those that are not. We disagree.

The Due Process Clause of the Fifth Amendment precludes the imposition of punishment based on arbitrary distinctions, and, in the sentencing context, "essentially duplicates" an argument based on equal protection. *Chapman v. United States,* — U.S. —, —, 111 S.Ct. 1919, 1927, 114 L.Ed.2d 524 (1991). The distinction between the types of offenses as to which grouping is required, and those as to which it is not, is not arbitrary or irrational. Grouping is part of the compromise between real offense sentencing and charged

offense sentencing. *See generally* S. Breyer, *The Federal Sentencing Guidelines and the Key Compromises upon Which They Rest,* 17 Hofstra L.Rev. 1 (1988); W. Wilkins & J. Steer, *Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines,* 41 S.C.L.Rev. 495 (1990). The main purpose of grouping is "to limit the significance of the formal charging decision and to prevent multiple punishment for substantially identical offense conduct." U.S.S.G. Ch. 3, Part D, introductory commentary. Grouping achieves lenience, by treating multiple counts as a single offense for sentencing purposes. But for many offenses, such as violent offenses against multiple victims, the commissioners reasonably determined that this lenience was inappropriate. U.S.S.G. § 3D1.2, background note.

We AFFIRM the district court's determination of Fine's offense level.[6]

---

**6.** Parts II–V of the panel opinion are unaffected by this decision. On remand, the district court will reduce Fine's criminal history category, as

required by Part IV of the panel opinion, and recalculate his sentence accordingly.