5 F.3d 541
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
David CONTRERAS-MATOS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee.
v.
Julian MONTES-MERCADO, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee.
v.
Reynaldo MERCADO-DE LA TORRE, Defendant-Appellant.
 Nos. 92-10161, 92-10200 and 92-10241.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 4, 1993.
Decided Aug. 30, 1993.
 
 Appeal from the United States District Court for the District of Hawaii; Nos. CR-90-00633-03-ACK, CR-90-00633-ACK, Alan C. Kay, District Judge, Presiding.
 D.Hawaii
 AFFIRMED.
 Before: GOODWIN, TANG and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Co-defendants Contreras and Mercado appeal their respective sentences under the Sentencing Guidelines after pleading guilty to importing cocaine base in violation of 21 U.S.C. Sec. 952(a) and 18 U.S.C. Sec. 2. Co-defendant Montes was convicted by a jury and appeals both the conviction and sentence for conspiring to import, and importing and distributing cocaine base in violation of 21 U.S.C. Secs. 952(a), 841(a)(1), 963 and 18 U.S.C. Sec. 2. We affirm the judgments in these consolidated appeals.
 
 
 3
 Beginning in mid-1988, Honolulu Drug Enforcement Administration ("DEA") Agent Robert Aiu initiated an investigation of alleged cocaine trafficking between South America and the United States involving David Contreras-Matos ("Contreras"), a Peruvian national. Agent Aiu was assisted in this investigation by DEA informant Rene Forga, also known as Rene Morales ("Morales").
 
 
 4
 Morales, using the undercover name "Alex," established contact with Contreras in June 1988. From that point on, the two exchanged a series of letters and, later, telephone calls. In these letters, Contreras informed Morales that he was affiliated with a coffee grower's association interested in developing a market in the United States and that he wanted to establish a business contact in the United States.
 
 
 5
 The DEA suspected that Contreras and other cocaine traffickers had affiliated themselves with a legitimate coffee growing enterprise as a cover for their cocaine trafficking activities. Eventually, Morales asked Contreras to mail him a sample of cocaine. Contreras agreed to do so. On April 18, 1989, Agent Aiu received a small sample of cocaine concealed in a hollowed-out paperback book.
 
 
 6
 Additional negotiations between Morales and Contreras followed. Contreras went to Hawaii for four days in August 1989, at Morales' expense, to pursue discussions of future cocaine deliveries and to meet with "Bob Akau," a fictitious drug broker played by Agent Aiu. While in Hawaii, Contreras promised to consult his partners, specifically identifying co-conspirators Reynaldo Mercado-De La Torre ("Mercado") and Julian Oscar Montes-Mercado ("Montes"), and to send additional samples of cocaine upon his return to Peru. Between November 1989 and March 1990, eleven separate packages containing a total of 2,527 grams of cocaine base were mailed to two post office boxes in Hawaii. Meanwhile, Contreras also informed Morales that he would travel again to Honolulu, this time accompanied by his partners Mercado and Montes, to negotiate an agreement to import multi-kilogram quantities of cocaine base from Peru to the United States.
 
 
 7
 Contreras, Mercado, and Montes arrived in Honolulu on March 22, 1990. Once in Hawaii, the three participated in several meetings with undercover Agent Aiu, informant Morales, Agent Keith Earnst, and other individuals. Several of these meetings were surreptitiously tape recorded. At one meeting, the three defendants agreed in a written memorandum to supply up to 500 kilograms of cocaine base for a price of $8,000 per kilo. The three defendants were arrested on March 26, 1993.
 
 
 8
 The indictment against defendants charged five counts. Counts 1 and 2 charged Contreras with importation and distribution of approximately 94 grams of cocaine base mailed some time between April 8 and 18, 1989. Counts 3 and 4 jointly charged Contreras, Mercado, and Montes with importation and distribution of approximately 2,500 grams of cocaine base mailed between October 30, 1989 and March 5, 1990. Count 5 charged all three with conspiring to import multi-kilogram quantities of cocaine into the United States.
 
 
 9
 On October 11, 1991, Contreras entered a guilty plea to Count 3 (importation of 2,500 grams of cocaine base) pursuant to a plea agreement. Mercado entered substantially the same plea on October 15, 1991. Montes went to trial on October 16, 1991 and was convicted on all charges against him--Counts 3, 4, and 5. Montes was subsequently sentenced to 235 months of imprisonment and a term of supervised release.
 
 
 10
 The sentencing hearings for Contreras and Mercado took place before Judge Kay on February 18, 1992 and March 23, 1992, respectively. By this time, Judge Kay had already presided over Montes' trial and was familiar with the evidence relating to the conspiracy charge (Count 5). Relying on the presentence report and the trial testimony, Judge Kay concluded that the 50 kilos of cocaine determined to be the reasonable object of the conspiracy charged in Count 5 should be aggregated to the 2.5 kilos charged in Count 3 as "relevant conduct" under U.S.S.G. Sec. 1B1.3. Judge Kay therefore sentenced Contreras to a prison term of 235 months and Mercado to a prison term of 127 months.
 
 I. APPELLANT CONTRERAS
 
 11
 Contreras' appeal is limited to challenging the district court's consideration of an unconvicted count pursuant to U.S.S.G. Sec. 1B1.3 in determining his base offense level. We review the application of the Sentencing Guidelines de novo. United States v. Fine, 975 F.2d 596, 599 (9th Cir.1992) (en banc).
 
 
 12
 The district court found the conspiracy charge in Count 5 to be "relevant conduct" under U.S.S.G. Sec. 1B1.3 and therefore aggregated the 50 kilos of cocaine in Count 5 to the 2.5 kilos to which Contreras had pleaded guilty in Count 3. With an aggregate amount of 52.5 kilos of cocaine base, Contreras' base offense level was 36. Contreras maintains that the proper amount should only have been the 2.5 kilos involved in Count 3, making his base offense level 28 rather than 36. Accordingly, the total offense level, with the addition of two levels for obstruction of justice, would have been 30. The corresponding guideline range would therefore have been 97-121 months of imprisonment rather than 235-293 months under a total offense level of 38.
 
 
 13
 Contreras argues that his plea agreement prohibited the district court from relying on the quantities of cocaine base alleged in the dismissed counts. We previously rejected this argument in United States v. Turner, 898 F.2d 705 (9th Cir.), cert. denied, 495 U.S. 962 (1990). The Turner court held that in determining offense levels, it was proper to aggregate quantities of drugs in dismissed counts as relevant conduct even though the counts had been dismissed pursuant to a plea bargain. Id. at 711. In reaching this result, the court noted that the application note to U.S.S.G. Sec. 1B1.3 explicitly provides that "multiple convictions are not required." Id.[1]
 
 
 14
 In further support of this result, the Sentencing Guidelines' section on plea agreements was recently amended to clarify that "the dismissal of a charge or a plea agreement not to pursue a potential charge shall not preclude the conduct underlying such charge from being considered" under the relevant conduct provisions of Sec. 1B1.3. U.S.S.G. Sec. 6B1.2(a), p.s. (Nov.1992).
 
 
 15
 Moreover, the record shows that Contreras' plea agreement did not purport to make any stipulation with regard to sentencing, thereby undercutting Contreras' argument that he has not received the benefit of his bargain. There was therefore no error in computing Contreras' base offense level.
 
 II. APPELLANT MERCADO
 
 16
 Mercado asserts the same legal challenge to the consideration of the 50 kilos of cocaine as "relevant conduct" under U.S.S.G. Sec. 1B1.3 that was raised by Contreras. We reject the challenge for the reasons discussed above.
 
 
 17
 Mercado, however, also raises another issue. He argues that even if it is appropriate to factor in dismissed counts as "relevant conduct" under U.S.S.G. Sec. 1B1.3, the district court erred by using a preponderance of the evidence standard rather than a higher standard of proof in determining that the conspiracy charge in Count 5 was "relevant conduct." In United States v. Restrepo, 946 F.2d 654 (9th Cir.1991) (en banc), cert. denied, 112 S.Ct. 1564 (1992), we held that the use of the preponderance of the evidence standard in sentencing proceedings generally satisfies due process. Id. at 656-57. Nonetheless, in dicta the court acknowledged that "there may be an exception to the general rule that the preponderance standard satisfies due process when a sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of conviction." Id. at 659.
 
 
 18
 Mercado argues that his is precisely one of those extreme cases where the sentencing factor becomes "a tail which wags the dog of the substantive offense," thereby requiring a higher standard of proof than preponderance of the evidence. United States v. Kikumura, 918 F.2d 1084, 1101 (3d Cir.1990). We disagree.
 
 
 19
 In Kikumura, the district court departed upward from a sentencing range of 27-33 months and sentenced the defendant to thirty years of imprisonment. Id. at 1089. The Third Circuit held that the magnitude of the increase was so great as to require application of a clear and convincing standard. Id. at 1101-02. By contrast, the sentence imposed on Mercado does not qualify as one of those rare instances that require more than a preponderance of the evidence standard. Without the 50 kilos of cocaine, Mercado's total offense level would have been 26 with a corresponding sentencing range of 63-78 months. The sentence actually received by Mercado was 127 months. Because we cannot say that Mercado's resulting sentence was overwhelmed by the U.S.S.G. Sec. 1B1.3 enhancement, the application of the preponderance of the evidence standard was not error. See United States v. Sanchez, 967 F.2d 1383, 1387 (9th Cir.1992).
 
 
 20
 Finally, Mercado argues that the conspiracy charge was not proved even under a preponderance of the evidence standard. A district court's findings of fact are reviewed for clear error, and due deference should be given to the district court's application of the guidelines to the facts. United States v. Fine, 975 F.2d 596, 599 (9th Cir.1992) (en banc).
 
 
 21
 Mercado's factual challenge has no merit. Relying on the presentence report and trial testimony from the trial of co-defendant Montes, the district court properly determined that the conspiracy constituted "relevant conduct." The government presented ample evidence, including tape recordings of meetings and a written agreement to supply cocaine, from which the district court could conclude that Mercado was a willing participant in the conspiracy. There was also no error in the district court's determination that 50 kilos of cocaine was the reasonable object of the conspiracy. The conclusion that defendants were reasonably capable of producing 50 kilos was based on prior statements by Mercado's co-defendants. Contreras, in a sworn statement, indicated that the group could have supplied between 50 and 100 kilos of cocaine. Montes, during discussions with undercover agents, explained that he had in the past made cocaine shipments of up to 50 kilos.
 
 
 22
 Mercado's sentence is affirmed.
 
 III. APPELLANT MONTES
 A. Entrapment
 
 23
 Montes argues that the district court erred in denying his motion for judgment of acquittal because he was entrapped as a matter of law. In reviewing the denial of this motion, the court must view the evidence in the light most favorable to the government, and decide whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Citro, 842 F.2d 1149, 1151 (9th Cir.), cert. denied, 488 U.S. 866 (1988).
 
 
 24
 To prove entrapment, Montes must show "undisputed evidence making it patently clear that an otherwise innocent person was induced to commit the illegal act by trickery, persuasion, or fraud of a government agent." United States v. Hart, 963 F.2d 1278, 1283 (9th Cir.1992) (internal quotations omitted). "The controlling question on review is whether the defendant lack[ed] the predisposition to commit the act." Citro, 842 F.2d at 1151-52 (internal quotations omitted). The following five factors should be considered in determining the predisposition of defendant:
 
 
 25
 1) the character or reputation of the defendant;
 
 
 26
 2) whether the government made the initial suggestion of criminal activity;
 
 
 27
 3) whether the defendant engaged in the activity for profit;
 
 
 28
 4) whether the defendant showed any reluctance;
 
 
 29
 5) the nature of the government's inducement.
 
 
 30
 Id. at 1152.
 
 
 31
 The defense's theory of the case was that Montes and Mercado were legitimate coffee growers who were entrapped by DEA informant Morales and DEA agents. Montes testified that he had travelled to Hawaii in pursuit of "coffee business" and had pretended to be a drug dealer at the behest of Morales. Contreras testified in favor of Montes, stating that he alone was involved in the cocaine venture and that Montes went to Hawaii to negotiate a coffee contract. Montes also presented evidence that he had no prior criminal history and that his family was extremely poor, thereby suggesting that he did not fit the profile of a drug dealer.
 
 
 32
 In rebuttal, the government presented prior statements by Contreras indicating that in fact Montes knew of the cocaine venture prior to arriving in Hawaii and was an active participant. Some of the most incriminating evidence against Montes includes testimony of conversations in which Montes described his laboratory in Peru and explained in intricate detail the maceration process used to convert coca leaves into cocaine base. Montes' tried to explain away his amazing ability to act the part of "the chemist" by arguing that his information regarding the maceration process came from newspaper accounts.
 
 
 33
 As the government argues, the entrapment claim boils down to a credibility issue, and the jury chose not to believe Montes. We find ample evidence in the record to support the jury's determination that Montes was not an otherwise innocent person induced by a government agent to commit an illegal act.
 
 
 34
 Montes also makes an implicit claim that the government engaged in outrageous conduct. In order to violate due process, "governmental conduct must be so grossly shocking and so outrageous as to violate the universal sense of justice." Hart, 963 F.2d at 1284. While the investigatory tactics of the DEA may be considered aggressive, they can hardly be characterized as "grossly shocking."
 
 B. Sufficiency of the Evidence
 
 35
 Montes argues further that there is insufficient evidence to support his conviction. In reviewing a challenge to the sufficiency of the evidence, the court must ask whether, after reviewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Barron-Rivera, 922 F.2d 549, 552 (9th Cir.1991). We affirm the conviction for the reasons articulated above in the entrapment discussion. There was sufficient evidence from which the jury could reasonably have concluded that Montes was an active participant in the drug venture.
 
 C. Peremptory Challenges
 
 36
 Montes also contests the use of peremptory challenges by the prosecution to exclude two single males. See Batson v. Kentucky, 476 U.S. 79 (1986). Montes argues that the two venire persons were improperly excluded on the basis of race--one because he was Caucasian and the other because he was part Hawaiian--and on the basis of marital status. This argument is completely without merit. Even assuming Montes had established a prima facie case under Batson, his claim fails. The district court properly concluded that the government articulated neutral, reasonable bases for its exercise of peremptory challenges. See United States v. Power, 881 F.2d 733, 740 (9th Cir.1989).
 
 D. Jury Misconduct
 
 37
 Montes contends next that his conviction must be vacated because several jury members were exposed to extrinsic information. During the first full day of jury deliberations, a packet of extrinsic information was inadvertently attached to a government exhibit. The extrinsic information included several DEA reports, photographs of drug exhibits already in evidence, and an envelope containing other exhibits with handwritten notations on the outside. The jury foreman noticed the packet of unauthorized materials and returned them to the court.
 
 
 38
 The district court conducted an evidentiary hearing to determine whether a new trial was required. Guided by the five-factor test of Bayramoglu v. Estelle, 806 F.2d 880, 887 (9th Cir.1987), the district court found that the extrinsic materials had been inadvertently sent to the jury; that only three jurors examined the extrinsic materials; that the extrinsic information was not discussed by any of the jurors; and that to the extent the jurors could recall the extrinsic information, it was mostly duplicative of testimony properly presented at trial.
 
 
 39
 When the jury has obtained extrinsic material, the defendant will be entitled to a new trial if there is "a reasonable possibility that the [extrinsic] information could have affected the verdict." Marino v. Vasquez, 812 F.2d 499, 504 (9th Cir.1987) (internal quotations omitted). Here, the fact that the extraneous material was largely duplicative or cumulative of evidence properly introduced in open court renders the error harmless. Hughes v. Borg, 898 F.2d 695, 700 (9th Cir.1990).
 
 E. Cumulative Error
 
 40
 Montes also argues that even if each of the errors asserted do not rise to the level of reversible error separately, their cumulative effect may nevertheless be so prejudicial as to require reversal. United States v. Wallace, 848 F.2d 1464, 1475 (9th Cir.1988). We reject this argument. Even in the aggregate, Montes' claims do not warrant reversal.
 
 E. Sentencing
 
 41
 Finally, Montes maintains that the district court erred in refusing to depart downward on the basis of mitigating factors not adequately considered by the Sentencing Commission, including the DEA's investigatory tactics. "The general rule is that a district court's discretionary decision not to depart downward from the Guidelines is not subject to review on appeal." United States v. Cook, 938 F.2d 149, 152 (9th Cir.1991). It is error, however, for the district court to refuse to depart downward not as an exercise of its discretion, but on the belief that it has no discretion to do so. The record in this case does not support the contention that the district court believed it had no discretion to depart downward.
 
 
 42
 The judgments appealed from in these consolidated appeals are AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Contreras attempts to breathe new life into the argument rejected in Turner by relying on United States v. Fine, 946 F.2d 650 (9th Cir.1991). The panel's decision in Fine, however, was withdrawn, and the en banc opinion reaffirms the reasoning of the Turner court. United States v. Fine, 975 F.2d 596, 601-02 (9th Cir.1992) (en banc)