21 F.3d 1118
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael G. SPRAGUE, Sr., Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Marsha Elaine ERVIN, Defendant-Appellant.
 Nos. 92-50490, 92-50576.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 7, 1994.*
Decided April 1, 1994.
 
 1
 Before: WIGGINS, T.G. NELSON, Circuit Judges, and REED,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Michael Sprague (Sprague) appeals his sentence following a guilty plea to one count of conspiracy to defraud the United States and three counts of defrauding the United States by falsely claiming tax refunds to which he was not entitled. Marsha Ervin (Ervin) appeals her sentence following a guilty plea for the same conspiracy. We affirm Sprague's sentence and dismiss Ervin's appeal.
 
 I. SPRAGUE
 A. More Than Minimal Planning
 
 4
 We conclude that the district court did not err in increasing Sprague's offense level for more than minimal planning. The fraudulent tax scheme involved not only the recruitment of individuals who could assist in pulling off the fraud, but the recruitment of individuals who had little or no income and who would allow the co-conspirators to use their names and social security numbers. The scheme involved the preparation of W-2 Forms and the use of computer software to prepare tax returns. In addition, it involved repeated acts over a period of time. See U.S.S.G. Sec. 1B1.1, comment. (n. 1(f)). This fraud was not simple nor unsophisticated. See United States v. Donine, 985 F.2d 463, 465 (9th Cir.1993) (more than minimal planning enhancement is appropriate where "[t]he thefts were not the work of a master criminal but they were neither simple nor unsophisticated.").
 
 
 5
 We also reject Sprague's argument that he was denied the opportunity to object to the more than minimal planning enhancement. Although the presentence report (PSR) failed to include the " + 2" in the margin, the clear import of paragraph 72 was to include the enhancement within the offense level calculation. Indeed, the PSR's "Guideline Summary" included " + 8" under the category for offense characteristics. There was no dispute that six levels of that adjustment represented the amount of loss caused by the fraudulent scheme under U.S.S.G. Sec. 2F1.1(b)(2)(A). Accordingly, it was reasonable to conclude that the remaining two points were properly attributable to the more than minimal planning enhancement. Moreover, even assuming the PSR did not put Sprague on notice that the enhancement was to apply, at the sentencing hearing he argued against that enhancement both on the merits and with regard to its apparent inclusion in the PSR calculation. See United States v. Rigby, 896 F.2d 392, 394 (9th Cir.1990) ("[W]hen any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor.") (internal quotations omitted).
 
 
 6
 Finally, the district court made clear on the record its resolution of the disputed issue and gave its reasons for so doing. See id. It found that the PSR had in fact recommended the enhancement. Then, after stating that it was free to reject the PSR's recommendation, the district court made a finding that the enhancement properly applied in this case. See id. (district court should make clear on the record its resolution of disputed matters). For the same reasons, Sprague's contention that the district court failed to follow Fed.R.Crim.P. 32 is without merit. See id.
 
 B. Total Loss
 
 7
 Our decision in United States v. Fine, 975 F.2d 596 (9th Cir.1992) (en banc ), forecloses Sprague's argument. In Fine, we held that the district court properly considered the total amount of loss caused by a fraudulent scheme when it calculated the defendant's base offense level under U.S.S.G. Sec. 2F1.1, even though such an amount included charges dismissed as part of a plea bargain. Id. at 598-600.
 
 
 8
 Similarly, the district court did not err in this case when it considered the total amount of loss caused by the fraudulent scheme ($86,583), even though some of that total included amounts contained in dismissed charges. Additionally, Sprague's plea agreement provided that he would be held accountable for the total loss involved for purposes of sentencing. Sprague's reliance upon United States v. Castro-Cervantes, 927 F.2d 1079 (9th Cir.1990), and United States v. Faulkner, 934 F.2d 190 (9th Cir.1991), superseded, 952 F.2d 1066 (1991), is misplaced. Both cases are distinguishable in that the district court departed upward based upon non-groupable, dismissed charges. See Fine, 975 F.2d at 602 (defendant who pleads guilty is entitled to expect sentence within Guideline range and not sentence which departs upward). Like Fine, by arguing that the total amount of the loss caused should not be included in calculating his sentence, Sprague "seeks a sentence below what the guidelines require, which would be contrary to the expectation of a sentence in accord with the guidelines." Id.
 
 
 9
 C. Section 5K1.1 Reduction for Cooperation with Government
 
 
 10
 Sprague contends that the district court erred in granting him only a two-level downward departure for his cooperation. A defendant may not challenge on appeal the extent of the district court's downward departure under Sec. 5K1.1. See United States v. Vizcarra-Angulo, 904 F.2d 22, 22-23 (9th Cir.1990). Accordingly, we decline to review the extent of the district court's downward departure in this case.
 
 D. Breach of Plea Agreement
 
 11
 We conclude that the Government did not breach the plea agreement by failing to inform the district court as to the extent of Sprague's cooperation.[1] Notably absent from the plea agreement is a promise by the Government that it would recommend a specific departure. Rather, the Government merely promised to inform the district court of Sprague's cooperation in light of the factors enumerated in Sec. 5K1.1 and, after evaluating that cooperation, it promised to recommend an unspecified departure. The Government fulfilled that obligation. Finally, although the Government acknowledged the accuracy of Sprague's handwritten supplement in which he outlined all the information he had provided to the authorities, it also stated that the information was not helpful. The Government was entitled to evaluate the usefulness of the information, and thus its failure to recommend an additional downward departure did not constitute a breach of the plea agreement.
 
 
 12
 E. Issues Raised in Sprague's Supplemental Pro Se Brief
 
 1. Role in Offense
 
 13
 We conclude that the district court did not clearly err in increasing Sprague's base offense level for his role as a supervisor or manager under Sec. 3B1.1(b). See United States v. Tamez, 941 F.2d 770, 777 (9th Cir.1991). Sprague readily agreed to participate in the scheme concocted by Garcia. Sprague recruited Starr, Lawless and Harding to assist in carrying out the fraudulent scheme. He supervised or managed at least one other criminally responsible "participant", Harding, who was indicted along with the other participants. See United States v. Helmy, 951 F.2d 988, 997 & n. 7 (9th Cir.) ("For purposes of [the Sec. 3B1.1(b) enhancement], a person may be deemed criminally responsible even though that person has not been convicted."), cert. denied, 112 S.Ct. 2287 (1992); see also United States v. Arias-Villanueva, 998 F.2d 1491, 1513-14 (9th Cir.) (indicted co-conspirators sufficient to support "criminally responsible" requirement for manager or supervisor enhancement), cert. denied, 114 S.Ct. 573 (1993). For example, when Harding had difficulty cashing one of the refund checks, he turned to Sprague for assistance. These factors were properly considered. See Sec. 3B1.1, comment. (n. 3).
 
 2. Offense Grouping
 
 14
 We reject Sprague's argument that the district court erred in imposing separate sentences for Counts One through Four. He pled guilty to conspiracy to defraud the United States and three substantive counts of filing false claims. Because these counts involved the same victim and constituted part of the same common scheme or plan, the counts were grouped. See Sec. 3D1.2. Moreover, the sentence complied with the mandates of Sec. 5G1.2 which provides the method for calculating a sentence on multiple counts. The district court properly imposed thirty months on each count to run concurrently. See Sec. 5G1.2, comment.
 
 3. Criminal History
 
 15
 Sprague argues that the PSR erroneously adds two points for commission of the instant offense while on parole or probation under Sec. 4A1.1(d).[2] We disagree. The PSR added the two points after concluding that the instant offense commenced one month prior to Sprague's discharge from parole on a forgery charge (L.A.--Case No. A824346), or in the alternative, that he was on probation for a prior forgery offense (Van Nuys--Case No. 87P05828).
 
 
 16
 Sprague contends that the fraud conspiracy began in March or April, 1991 when Garcia called him and requested that he obtain the names and social security numbers of individuals. It was then, he argues, that he agreed to participate in the scheme. However, Sprague pled guilty to the conspiracy as charged in the indictment which states that the conspiracy began in January, 1991. The stipulated facts state that it was "at the beginning of 1991" when Garcia described the fraudulent scheme to Sprague. His parole for the L.A. forgery conviction was discharged on February 13, 1991. Because Sprague was still on parole when his involvement in the conspiracy began, the two points were properly included in his score under Sec. 4A1.1(d).
 
 
 17
 In the alternative, even were we to find that this calculation is erroneous, Sprague was on probation for his Van Nuys forgery conviction at the time of the instant offense. In January, 1988, he received probation for two years. However, he was not released from probation prior to the period of the conspiracy because on November 18, 1991, a bench warrant was issued as a result of Sprague's failure to appear for a hearing. The disposition of that case was still pending at the time the PSR was prepared. During the period of the conspiracy (even using Sprague's conservative estimate of the commencement of the conspiracy, March or April, 1991), he was still on probation for the Van Nuys forgery conviction. Consequently, the two points were properly added.
 
 
 18
 Second, he asserts that the PSR improperly included "traffic infractions" in his criminal history score. What Sprague characterizes as mere traffic infractions were in fact a DUI conviction for which he received three years probation and a conviction for driving with a suspended or revoked license for which he received two years probation. In computing the criminal history category, "[c]onvictions for driving while intoxicated or under the influence (and similar offenses by whatever name they are known) are counted. Such offenses are not minor traffic infractions...." Sec. 4A1.2, comment. (n. 5 (emphasis added).) Similarly, driving without a license or with a revoked or suspended license is counted if the sentence was a term of probation for at least one year. Sec. 4A1.2(c)(1)(A). Therefore, these convictions were properly counted.
 
 
 19
 Finally, Sprague claims that the probation officer used self-incriminating information when computing his criminal history in violation of Sec. 1B1.8(a). Sprague's argument is without merit. Section 1B1.8(b)(2) states that subsection (a) shall not apply to restrict the use of information "concerning the existence of prior convictions and sentences in determining Sec. 4A1.1 (Criminal History Category)...." Because Sprague's contention pertains only to his criminal history, which is expressly excepted from the provisions of Sec. 1B1.8(a), there was no error.
 
 4. Prosecutorial Misconduct
 
 20
 Sprague argues that prosecutorial misconduct occurred because he received a disparate sentence in comparison to his coconspirators. This issue is more properly characterized as a sentencing issue, rather than one involving prosecutorial misconduct because sentencing issues are the responsibility of the court. In any event, we have held that "[a] sentencing judge is under no obligation to equalize sentences among coconspirators or codefendants." United States v. Kohl, 972 F.2d 294, 300 (9th Cir.1992); see also United States v. Carpenter, 914 F.2d 1131, 1136 (9th Cir.1990) (defendant's challenge to his sentence must fail when it is based upon disparity between his sentence and that of his codefendant).
 
 5. Double Counting
 
 21
 Sprague's contention that the district court erred by enhancing his sentence both for more than minimal planning and for his role as a supervisor or manager lacks merit. We rejected this same argument in United States v. Kelly, 993 F.2d 702, 704-05 (9th Cir.1993), where we held that impermissible double counting does not occur when the district court imposes enhancements for more than minimal planning and role in the offense.
 
 6. Restitution
 
 22
 Next, Sprague argues that the district court erred in ordering him to pay $38,151 because it did not consider his ability to pay. We disagree. "[A]t the time restitution is ordered the record must reflect some evidence that the defendant may be able to pay restitution in the amount ordered in the future." United States v. Ramilo, 986 F.2d 333, 336 (9th Cir.1993). Nonetheless, the district court need not make a specific finding that a defendant has the ability to pay the restitution as long as the record reflects that the district court considered the PSR in determining whether to order restitution. United States v. Bachsian, 4 F.3d 796, 800 (9th Cir.1993), cert. denied, 114 S.Ct. 901 (1994).
 
 
 23
 We find that the district court considered the PSR in determining whether to order restitution. Although the PSR indicates that Sprague's net monthly cash flow is $380, a sentencing court is not prohibited from imposing restitution on a defendant who is indigent at the time of sentencing; rather, the question is whether he has the future ability to pay. See id.; see also Ramilo, 986 F.2d at 336 ("The question here, however, is not whether the district court improperly imposed restitution on a presently indigent, but whether the record indicates the district court considered the defendant's future ability to pay."). The PSR contained information regarding Sprague's financial status and future ability to pay, including his employment history and assets. See Bachsian, 4 F.3d at 800 & n. 4. Accordingly, remand is not required.
 
 F. Ineffective Assistance of Counsel
 
 24
 In federal criminal practice, ineffective assistance of counsel claims are customarily addressed on collateral attack under 28 U.S.C. Sec. 2255, rather than for the first time on direct appeal. See United States v. Baldwin, 987 F.2d 1432, 1437 (9th Cir.), cert. denied, 113 S.Ct. 2948 (1993). Nonetheless, ineffective assistance claims may be resolved on appeal where the record is sufficient to permit evaluation of the claim. Id. Sprague has failed to demonstrate that his counsel's performance was " 'outside the wide range of professionally competent assistance,' and that 'the deficient performance prejudiced the defense.' " Id. (quoting Strickland v. Washington, 466 U.S. 668, 687-90 (1984)).
 
 
 25
 Sprague claims that he received ineffective assistance of counsel in that his counsel failed to: (1) argue inaccuracies in the PSR; (2) argue that the Government breached the plea agreement; (3) challenge the restitution imposed; (4) object to the criminal history category; (5) actively pursue the appellate process; (6) adequately inform him of the consequences of his guilty plea and his appellate rights. As was demonstrated above, his claims of error, (1) through (4), lack merit. Accordingly, Sprague has failed to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Nor has he established prejudice with regard to his appellate rights, claims (5) and (6).
 
 II. ERVIN
 
 26
 Although the district court's belief that it lacks authority to depart downward is reviewable on appeal, its discretionary refusal to depart downward is not reviewable on appeal. United States v. Reyes-Alvarado, 963 F.2d 1184, 1189 (9th Cir.), cert. denied, 113 S.Ct. 258 (1992). The record in this case indicates that the district court understood it had the authority to make a downward departure; but, after considering Ervin's arguments in support of the departure, it concluded that such departure was not justified. Even if the record were silent as to the district court's recognition of its authority to depart, such silence is insufficient to indicate that the district court believed it lacked authority to depart. See United States v. Garcia-Garcia, 927 F.2d 489, 491 (9th Cir.1991).
 
 
 27
 Nowhere does the district court state that it lacked authority to depart downward. Accordingly, because we lack jurisdiction to review its discretionary refusal to depart downward, we dismiss Ervin's appeal.
 
 
 28
 Sprague's conviction and sentence are AFFIRMED; Ervin's appeal is DISMISSED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 Honorable Edward C. Reed, Jr., Senior U.S. District Judge for the District of Nevada, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We note that because Sprague failed to argue in the district court that the Government breached the plea agreement, he has waived this issue. See United States v. Flores-Payon, 942 F.2d 556, 558 (9th Cir.1991) (failure to raise breach of plea agreement issue in district court waives review on appeal, unless there are exceptional circumstances, interim change in law, or issue presented is purely one of law). We find that none of the Flores-Payon exceptions apply in this case; thus, we review for plain error
 
 
 [2]
 Although the Government argues that Sprague waived this issue by not raising it below, we address it for purposes of the ineffective assistance claim, see infra