99 F.3d 1147
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Rita O'BRIEN, Defendant-Appellant.
 No. 96-30020.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 16, 1996.
Decided Oct. 07, 1996.
 
 Before: WRIGHT, SCHROEDER and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 O'Brien appeals her sentence under the Sentencing Guidelines. We have jurisdiction under 18 U.S.C. § 3742 and affirm.
 
 ANALYSIS:
 
 3
 O'Brien argues that the district court erred in increasing her offense level pursuant to U.S.S.G. § 2F1.1(b)(6)(B) (Nov. 1995). That provision says that if the offense "affected a financial institution and the defendant derived more than $1,000,000 in gross receipts from the offense, increase by 4 levels. If the resulting offense level is less than level 24, increase to level 24."
 
 1. Standard of Review
 
 4
 Under United States v. Sarno, 73 F.3d 1470, 1500 (9th Cir.1995) cert. denied, 116 S.Ct. 2554-55 (1996), we review the district court's legal interpretation of the Guidelines de novo, and its factual findings for clear error. We need not determine whether, under Koon v. United States, 116 S.Ct. 2035 (1996), review of the district court's legal interpretation must now be for abuse of discretion rather than de novo. Below, we review the district court's determination de novo and conclude that it was correct; if review were for abuse of discretion, we would reach the same conclusion. We give "due deference" to the district court's application of the guidelines to the facts. 18 U.S.C. § 3742(e); United States v. Fine, 975 F.2d 596, 599 (9th Cir.1992).
 
 
 5
 2. "Affected a Financial Institution"
 
 
 6
 O'Brien contends that her offense did not "affect a financial institution." The parties agree on the definition of "affect": "To act upon; influence; change; ... or produce an effect or result upon...." Black's Law Dictionary 57 (6th ed. 1990). Under this definition, O'Brien's offense affected West One. The fraudulent loan applications influenced the bank's decisions, changed its course of action and produced an effect on the bank in that it took steps that it would not have taken had O'Brien not submitted the applications. Because of the offense, West One experienced a year long struggle of investigating, filing suit, searching for assets, seeking attachments, and auditing her corporation in its attempts to collect.
 
 
 7
 O'Brien argues that West One was not "affected" because she repaid the loans in full and also paid interest and costs. She contends that under the guideline, a financial institution is not affected unless it suffers monetary loss. Yet neither the guideline nor the definition of "affect" requires monetary loss. The plain meaning of the term "affected" controls because it is not ambiguous. See United States v. Young, 936 F.2d 1050, 1054 (9th Cir.1991) (if statute is unambiguous, its plain language controls except in rare and exceptional circumstances).
 
 
 8
 She responds that, if the guideline were not meant to require monetary loss, the words "affected a financial institution" could have been omitted, because every fraudulent loan application affects a bank in some way. O'Brien would have the guideline interpreted to read: "If the defendant derived more than $1,000,000 in gross receipts from a financial institution, increase by 4 levels." This interpretation fails to recognize the broader scope of the guideline. The guideline applies if: (1) an institution is affected; and (2) gross receipts of over $1 million come from the offense. The $1 million need not come from the financial institution for the guideline to apply.
 
 
 9
 3. "Derived More than $1,000,000 in Gross Receipts"
 
 
 10
 O'Brien argues that the court erred in concluding that she "derived" more than $1 million from the offense. She says that at the time she was charged, she had not "derived the benefit" of the money because she had repaid the loan. This argument fails for two reasons. First, she benefited from the use of the money, from the date she received it until she repaid it. Second, the guideline does not say that the defendant must "derive benefit" from the money. Rather, it simply requires that the defendant derive more than $1 million in gross receipts from the offense. The use of the term "gross receipts" indicates that the guideline applies to the amount of money initially received by the defendant, regardless of the amount repaid.
 
 
 11
 O'Brien argues that she did not individually "derive" over $1 million because she used the loan money to pay business debts of H.O. Sports, to buy out minority shareholders and to infuse capital into the company. This argument also fails. As noted, the guideline refers to gross receipts, so the manner in which she used the money after receiving it is irrelevant.
 
 
 12
 Moreover, the record shows that much less of the loan money went to H.O. Sports than O'Brien represents. Although there is no clear breakdown of the disbursement, it appears that O'Brien used $243,500 to pay a second mortgage on a condominium, $200,000 to pay personal loans from H.O. Sports, and $300,000 to pay off other personal debts. She then used another $300,000 to cover a check kite. Thus, she derived $1,043,500 for her own benefit. As for the money that was used to help H.O. Sports, O'Brien indirectly derived a share of it as a partial owner and salaried employee of the company.
 
 CONCLUSION:
 
 13
 The district court correctly concluded that "the clear reading of the guideline provision is applicable here." O'Brien's offense affected West One and she directly or indirectly derived more than $1 million in gross receipts from the offense.
 
 
 14
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3